# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## MILLER-DAVIS COMPANY v AHRENS CONSTRUCTION, INC

Docket No. 145052. Argued November 7, 2013 (Calendar No. 5). Decided April 15, 2014.

Miller-Davis Company, the general contractor and construction manager for the construction of a natatorium housing an indoor pool at the Sherman Lake YMCA, brought an action in the Kalamazoo Circuit Court against Ahrens Construction, Inc. (a subcontractor), and Merchants Bonding Company (a surety), alleging breach of contract as a result of faulty workmanship when installing the roofing system covering the natatorium. The subcontract had incorporated by reference the project plans and specifications and required Ahrens to indemnify Miller-Davis from and against any liabilities, claims, damages, losses, actions, and expenses arising out of the subcontract. After a moisture problem involving condensation in the natatorium developed, the project architects discovered significant deficiencies in Ahrens's work. Ahrens moved for summary disposition on the basis that the statute of repose for architects, engineers, and contractors, MCL 600.5839(1) barred the action. The court, William G. Schma, J., denied the motion. The Court of Appeals denied Ahrens's interlocutory application for leave to appeal in an unpublished order, entered March 6, 2006 (Docket No. 266936). After Judge Schma retired, the court, Gary C. Giguere, Jr., J., concluded following a bench trial that Ahrens had breached its contract and that the breach caused the moisture problem. The court awarded Miller-Davis damages against Ahrens for the cost of corrective work made necessary by the breach. The court also ruled that Miller-Davis had no cause of action for contractual indemnity because no claims, suits, actions, recoveries, or demands were ever made, brought, or recovered against it within the meaning of the indemnity clause in the parties' contract. Ahrens appealed, and Miller-Davis cross-appealed. The Court of Appeals, JANSEN, P.J., and HOEKSTRA and MARKEY, JJ., reversed and remanded the case for entry of a judgment in favor of Ahrens, holding that MCL 600.5839(1) barred Miller-Davis's claims. 285 Mich App 289 (2009). The Supreme Court granted Miller-Davis's application for leave to appeal. 488 Mich 875 (2010). The Supreme Court reversed and remanded the case to the Court of Appeals for further proceedings, holding that MCL 600.5839(1), which is both a statute of limitations and a statute of repose applicable in actions against licensed architects, professional engineers, and contractors to recover damages for injuries to persons or property, does not apply to breach of contract actions. Therefore, breach of contract actions against architects, engineers, or contractors are governed by the general statute of limitations for contract actions, MCL 600.5807(8). Because Miller-Davis's complaint alleged that Ahrens had breached the contract by installing a roof that did not conform to the specifications and also sought indemnity for the corrective work that Miller-Davis had to perform, the Supreme Court held that the contract statute of limitations applied and that the Court of Appeals had erred by concluding that

MCL 600.5839(1) barred Miller-Davis's contract action. 489 Mich 355 (2011). On remand, the Court of Appeals, JANSEN, P.J., and HOEKSTRA and MARKEY, JJ., affirmed in part, reversed in part, and remanded the case for entry of judgment in favor of Ahrens, concluding that under MCL 600.5827, Miller-Davis's claim had accrued at the time of the wrong on which it was based rather than the time when damage resulted. Because the panel determined that the underlying basis for Miller-Davis's claim was the breach of a contract provision specifying that all work had to comply with the terms and requirements of the plans and specifications, it held that Ahrens's breach occurred on the date of substantial completion, which was beyond the six-year period of limitations for contract actions in MCL 600.5807(8). The panel also stated that the indemnity clauses in the contract did not affect its conclusion because no one had brought a claim or demand against Miller-Davis within the meaning of those clauses. Ahrens therefore had not breached the indemnity provisions, and Miller-Davis could not use the date of the alleged breach of the indemnity clauses as an alternative accrual date for its underlying breach of contract claim because even if Miller-Davis could show that the YMCA had made a claim or demand against it, that demand arose out of the YMCA's contract with Miller-Davis as general contractor, not Miller-Davis's subcontract with Ahrens. Finally, the panel determined that Miller-Davis had failed to provide evidence causally linking Ahrens's nonconforming work to the moisture problem, which the panel considered the basis for Miller-Davis's claim for damages. 296 Mich App 56 (2012). The Supreme Court granted Miller-Davis's application for leave to appeal. 494 Mich 861 (2013).

In a unanimous opinion by Justice KELLY, the Supreme Court *held*:

The six-year statute of limitations in MCL 600.5807(8) did not bar Miller-Davis's claim because its breach of contract claim for damages related to Ahrens's failure to indemnify was distinct from its breach of contract claim based on Ahrens's failure to install the roof properly in the first place and therefore necessarily accrued at a later point.

1. An indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation. The language of the subcontract between Ahrens as indemnitor and Miller-Davis as indemnitee was clearly intended to apply as broadly as possible. The Court of Appeals erred by determining that the indemnity clauses did not apply because no one had brought a claim or demand against Miller-Davis within the meaning of those clauses. The agreement for corrective work that the YWCA and Miller-Davis entered into indicated that the YMCA had a claim or demand against Miller-Davis that was resolved at the latter's expense. That the YMCA and Miller-Davis resolved their dispute without legal action did not alter Ahrens's obligation to indemnify Miller-Davis for the corrective work it was required to undertake in light of Ahrens's default. Accordingly, the indemnity clauses applied to Miller-Davis's corrective work.

2. Causation of damages is an essential element of any breach of contract action, including an action for indemnity. A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) that the other party breached (3) thereby resulting in damages to the party claiming the breach. The Court of Appeals misconstrued the relevant causation inquiry. Miller-Davis incurred costs undertaking the corrective work that Ahrens refused to perform. To the extent that Ahrens was obligated to

indemnify Miller-Davis for the costs of the corrective work, its breach of that obligation caused Miller-Davis's claimed damages. Whether Ahrens's nonconforming work caused the moisture problem was not relevant to the analysis. Ahrens was obligated to install the roof system in accordance with the plans and specifications and correct any nonconforming installation, regardless of whether its nonconforming work caused the problem. Ahrens's refusal to correct its nonconforming work was a but-for cause of the agreement for corrective work, which passed the liability for that work on to Miller-Davis. Miller-Davis's duty to undertake the corrective-work obligation shirked by Ahrens resulted in the out-of-pocket expenses that Miller-Davis sustained in the course of reinstalling the roof. Because Miller-Davis presented sufficient evidence to establish that Ahrens's breach of the indemnity clauses caused those losses, it was entitled to damages in the amount of its losses.

3. The six-year limitations period of MCL 600.5807(8) begins to run when the promisor fails to perform under the contract. A specific action for indemnification against losses accrues when the indemnitee has sustained the loss. The Court of Appeals incorrectly held that the wrong that provided the basis for Miller-Davis's complaint must have occurred on or before Ahrens completed its portion of the overall construction project. This analysis failed to recognize that Ahrens breached the contract twice: initially when it failed to install the roof system in accordance with the plans and specifications and again later when it refused to indemnify Miller-Davis for the corrective work required to remedy its nonconforming installation. While both claims were based on terms in the same agreement, nothing in MCL 600.5807 or contract-law principles compelled the conclusion that the claims must therefore share a common point of accrual. Rather, the date of accrual for the breach of an indemnified promise does not serve as the date of accrual for an indemnity action. Those separate breaches have logically distinct points of accrual. The cause of action for the first breach accrued when Miller-Davis made its last payment to Ahrens under the subcontract, more than six years before Miller-Davis brought suit, and was therefore barred by MCL 600.5807(8). Ahrens's breach of the indemnity provision provided an independent basis for Miller-Davis's instant indemnification claim. That breach necessarily occurred after Ahrens's breach of the underlying promise to conform its work to the subcontract's specifications because no demand or claim on Miller-Davis could trigger Ahrens's obligation to indemnify until after Ahrens had breached its promise to install the roof system according to the specifications. Miller-Davis filed its complaint well within the six-year period of limitations, and MCL 600.5807(8) did not bar its indemnification claim.

Court of Appeals' judgment reversed in part with respect to discussion of indemnity claim, and case remanded to circuit court for entry of judgment in favor of Miller-Davis and determination of entitlement to attorney's fees under the indemnification clauses.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                       Stephen J. Markman
                       Mary Beth Kelly
                       Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano

FILED APRIL 15, 2014

STATE OF MICHIGAN

SUPREME COURT

MILLER-DAVIS COMPANY,

      Plaintiff-Appellant,

v                                                    No. 145052

AHRENS CONSTRUCTION, INC,

      Defendant-Appellee,

and

MERCHANTS BONDING COMPANY,

      Defendant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

After nearly a decade of litigation and alternative dispute resolution proceedings, the indemnification contract underlying the troubled natatorium roof in this case again wends its way to this Court. We previously held that the six-year period of limitations of MCL 600.5807(8) applies to the parties' indemnification contract. We now hold that the

indemnity clauses in the parties' subcontract apply here, because the plain language of the indemnification clauses extends to Ahrens's failure to undertake corrective work as obligated by the subcontract. We further hold that Sherman Lake YMCA made a "claim" upon Miller-Davis which triggered Ahrens's liability under the indemnity clauses. Ahrens's failure to indemnify therefore caused the damages Miller-Davis sustained in undertaking the corrective work itself. Finally, we hold that Miller-Davis's claim was not barred by the six-year statute of limitations found in MCL 600.5807(8). Rather, Miller-Davis's breach of contract claim for Ahrens's failure to indemnify is distinct from its breach of contract claim based on Ahrens's failure to install the roof according to specifications, and Miller-Davis's indemnity action necessarily accrued at a later point. We therefore reverse that portion of the Court of Appeals' opinion discussing Miller-Davis's indemnity claim, and remand this case to the Kalamazoo Circuit Court for entry of judgment in Miller-Davis's favor and to determine whether Miller-Davis is entitled to attorney's fees under the relevant indemnification clauses.

## I. FACTS AND PROCEDURAL HISTORY

Miller-Davis Company was an "at risk" contractor[1] for the Sherman Lake YMCA's natatorium project.[2] Miller-Davis hired defendant Ahrens Construction, Inc., as a subcontractor to install similar roof systems on three rooms, including the natatorium. The contract incorporated by reference the applicable project plans and specifications, the

---

[1] Miller-Davis was contractually obligated to the owner, Sherman Lake YMCA, to fulfill the obligations of all subcontractors in the event of a subcontractor default.

[2] Sherman Lake YMCA is not a party to this action.

2

American Institute of Architects General Conditions (AIA A201), the project manual, and a written guarantee of Ahrens's work.[3]  AIA A201 required the subcontractor to "assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assume[d] toward the Owner and Architect."[4]  It further obligated Ahrens to "bear costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby,"[5] and to correct at its expense any work "found to be not in accordance with the Contract Documents" within one year of Substantial Completion.[6] Ahrens agreed to install all products in accordance with the manufacturer's instructions and the requirements of the plans and specifications.  Ahrens further agreed to indemnify Miller-Davis from and against any liabilities, claims, damages, losses, actions, and expenses arising out of the subcontract.

Ahrens substantially completed the work on June 11, 1999, at which point its Written Guarantee commenced.  The Guarantee provides in relevant part:

> [Ahrens] hereby agree[s] that all work furnished to the project is guaranteed against deficiencies and defects in materials and/or workmanship for a period of one (1) year, as described in the Contract Documents.

---

[3] We disagree with the Court of Appeals that the record was unclear whether AIA A201 was part of the subcontract, or that Miller-Davis waived any arguments regarding AIA A201.  The parties expressly stipulated at trial that AIA A201 was incorporated by reference and made part of their subcontract.

[4] AIA A201 5.3.

[5] AIA A201 12.2.1.

[6] AIA A201 12.2.2.

3

* * *

We agree to satisfy such obligations, which appear within the guarantee period without cost to the Owner.

* * *

Nothing contained in this agreement shall be construed to establish a period of limitation with respect to any other obligation we may have under the Contract Documents or to alter any longer period of time as may be prescribed by law of the Contract Documents.

A certificate of substantial completion issued on June 25, 1999. During the winter season of 1999-2000, Sherman Lake YMCA experienced excessive condensation in the natatorium, which it termed the "natatorium moisture problem" (NMP). As a result of the accumulated condensation, it sometimes appeared to be raining within the natatorium. Miller-Davis notified Ahrens of the NMP on January 28, 2000, and Ahrens returned to the project to undertake remedial work not contemplated in the original design. Ahrens received its final payment on February 17, 2000, but the NMP persisted.

In February 2003, the project architects opened the roof and discovered significant deficiencies with Ahrens's installation of the roof system, namely inch-wide gaps between the Styrofoam blocks and sub-T supports, and many gaps and tears in the vapor barrier. The architects determined that the installation was not in substantial compliance with the contract, and directed reinstallation of the roof system using salvageable materials to the extent possible. The corrective work contained three elements not contained in the original design: Procor, a waterproofing agent; expanding foam insulation; and butyl caulk sealant.

By letter dated April 2, 2003, Miller-Davis notified Ahrens that the roof system was not installed in accordance with the manufacturer's requirements and the subcontract

4

guidelines. Miller-Davis's May 5, 2003 letter to Merchants Bonding Company, Ahrens's surety, explicitly declared Ahrens in default and requested a conference within fifteen days. The parties met on June 27, 2003, and Ahrens agreed to review the corrective work plans and provide a plan for performance within a week. Neither Ahrens nor its bonding company provided such a plan. On July 15, 2003, Miller-Davis gave Ahrens notice of default, terminated Ahrens's right to perform the contract, and demanded the bonding company perform under the bond. In that letter, plaintiff noted that Sherman Lake YMCA was "considering declaring a Contractor Default . . . ." The bonding company notified Miller-Davis that Ahrens had waived the surety's right to perform under the bond.

Miller-Davis and Sherman Lake YMCA entered into an Agreement for Corrective Work on August 27, 2003. Pursuant to the agreement and at the direction of the architects, Miller-Davis installed Procor, expanding foam insulation, and butyl caulk. On December 8, 2003, an independent contractor certified that Miller-Davis had completed the corrective work. Sherman Lake YMCA has not since experienced the NMP.

Miller-Davis filed suit in the Kalamazoo Circuit Court against Ahrens and its bonding company in May 2005, alleging breach of contract and seeking indemnification and bond collection.[7] Following a bench trial, the circuit court found that Ahrens's work was deficient and that it caused the NMP. The court rejected Ahrens's assertion that it had ceased involvement with the project before July 2003, noting that the parties had

---

[7] Merchants Bonding Company's liability is no longer at issue in this case. See *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 370 n 36; 802 NW2d 32 (2011). As a result, "defendant" refers only to Ahrens.

5

engaged in a series of meetings regarding corrective work from March to July 2003. Although the court found that "no claims, suits, actions, recoveries, or demands were ever made or recovered" by Sherman Lake YMCA against Miller-Davis, it found that Miller-Davis had nonetheless suffered damages as a result of Ahrens's deficient work and awarded Miller-Davis damages of $348,851.50.

On appeal, Ahrens argued that the circuit court erred by not granting summary disposition in its favor based on the contractor's statute of repose, MCL 600.5839(1).[8] The Court of Appeals agreed.[9] We reversed, holding that the general statute of limitations for contract actions set forth in MCL 600.5807(8)[10] applies to this case rather

---

[8] MCL 600.5839(1) provides:

> A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within either of the following periods:
>
> (a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.
>
> (b) If the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, an action to which this subdivision applies shall not be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

[9] *Miller-Davis Co v Ahrens Constr, Inc*, 285 Mich App 289, 292; 777 NW2d 437 (2009).

[10] MCL 600.5807 provides:

6

than the contractor's statute of repose, which applies only to tort actions against a contractor.[11] We remanded to the Court of Appeals for application of the proper statute of limitations and for consideration of any remaining issues.[12]

On remand, the Court of Appeals explained that MCL 600.5827 provided that Miller-Davis's claim accrued at the time of the wrong upon which it was based rather than the time when damage resulted.[13] According to that distinction, the Court of Appeals determined that "the underlying basis for [Miller-Davis's] claim is that defendant breached a contract provision providing that '[a]ll . . . work furnished on this order shall comply with the terms and requirements of the plans and

---

No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

* * *

(8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

[11] *Miller-Davis*, 489 Mich at 363-364.

[12] *Id.* at 371-372.

[13] MCL 600.5827 provides:

Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

specifications . . . .' "[14]  As a result, it held that Ahrens's breach occurred upon the date of substantial completion, which was beyond the six-year statute of limitations for breach of contract actions supplied by MCL 600.5807(8).

The Court of Appeals also held that the indemnity clauses did not affect its conclusion, explaining that "no one had brought a claim or demand against plaintiff within the meaning of the indemnification clause."[15]  The Court of Appeals found that "defendant did not breach [the indemnity] provision[s] of the contract," and Miller-Davis could not use the date of defendant's alleged breach of the indemnity clause as an "alternative accrual date" for its underlying breach of contract claim.[16]  The Court of Appeals also concluded that even if Miller-Davis could show that Sherman Lake YMCA made a claim or demand against plaintiff, such a demand "arose out of the owner's contract with plaintiff, not plaintiff's subcontract with defendant."[17]  Finally, the Court of Appeals determined that Miller-Davis had failed to provide evidence causally linking Ahrens's nonconforming work to the NMP, which it considered to be the basis for Miller-Davis's claim for damages.[18]

---

[14] *Miller-Davis Co v Ahrens Constr, Inc (On Remand)*, 296 Mich App 56, 61; 817 NW2d 609 (2012).

[15] *Id.* at 69.

[16] *Id.* at 70.

[17] *Id.*

[18] *Id.* at 71-72.

We again granted Miller-Davis's application for leave to appeal, requesting that the parties brief:

> (1) whether the indemnification clause in the plaintiff's contract with defendant Ahrens applies to this case; (2) if so, whether the plaintiff's action for breach of that provision was barred by the statute of limitations, MCL 600.5807(8); and (3) whether the plaintiff adequately proved that any breach of the indemnification clause caused its damages, including the issue whether the trial court clearly erred in concluding that defendant Ahrens' performance of nonconforming work caused the natatorium moisture problem.[19]

## II. STANDARD OF REVIEW

Resolution of this case requires interpretation of MCL 600.5807(8). We review this question of law de novo.[20] The proper interpretation of a contract is also a question of law that we review de novo.[21] We review a trial court's findings of fact for clear error, giving particular deference to the trial court's superior position to determine witness credibility.[22] A factual finding is clearly erroneous if there is no substantial evidence to sustain it[23] or if, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.[24]

---

[19] *Miller-Davis Co v Ahrens Constr, Inc*, 494 Mich 861; 831 NW2d 234 (2013).

[20] *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

[21] *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

[22] *People v Farrow*, 461 Mich 202, 208-209; 600 NW2d 634 (1999).

[23] *Beason v Beason*, 435 Mich 791, 803; 460 NW2d 207 (1990).

[24] *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

### III. ANALYSIS AND APPLICATION

To determine whether Miller-Davis has an actionable claim for indemnification, we will first consider the language of the indemnity clauses, ascertaining whether they apply to the facts of this case. If these clauses apply, we must then consider whether Miller-Davis has shown that Ahrens's failure to conduct corrective work caused Miller-Davis's damages. Finally, we determine whether Miller-Davis sustained any such damages within the six-year limitations period for breach of contract actions found in MCL 600.5807(8).

### A. INDEMNIFICATION

An indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation.[25] In the construction context, indemnity clauses between general contractors (indemnitees) and subcontractors (indemnitors) are common, with general contractors and subcontractors ultimately liable to the project owner. Michigan law provides contracting parties with broad discretion in negotiating the scope of indemnity clauses. The only legal restriction upon indemnity in the subcontractor context is the prohibition on indemnification against the "sole negligence" of the contractor, which is not at issue here.[26]

As with any other contract, our primary task in construing a contract for indemnification is to give effect to the parties' intention at the time they entered into the

---

[25] 41 Am Jur 2d, Indemnity, § 4, p 417.

[26] MCL 691.991.

10

contract.[27]  We determine the parties' intent by examining the language of the contract according to its plain and ordinary meaning.[28]  In doing so, we avoid an interpretation that would render any portion of the contract nugatory.[29]  We assess the threshold question whether a contract's indemnity clause applies to a set of facts by a "straightforward analysis of the facts and the contract terms."[30]

Where parties have expressly contracted for indemnification, "the extent of the duty must be determined from the language of the contract."[31]  To this end, the indemnity clauses in the parties' subcontract are critical in applying general indemnification principles to the facts of this case.  The subcontract provides in relevant part:

> You [Ahrens] as Subcontractor/Supplier agree to *defend, hold harmless and indemnify* Miller-Davis Company . . . from and against *all* claims, damages, losses, demands, liens, payments, suits, actions, recoveries, judgments and expenses including attorney's fees, interest, sanctions, and court costs which are made, brought, *or recovered* against Miller-Davis Company, by reasons of or resulting from, but not limited to, any injury, damage, loss, or occurrence arising out of or resulting from the performance or execution of this Purchase Order and caused, in whole or in part, by any act, omission, fault, negligence, or breach of the conditions of this Purchase Order by the Subcontractor/Supplier, its agents, employees, and subcontractors regardless of whether or not caused in whole or in part by any act, omission, fault, breach of contract, or negligence of Miller-Davis Company.  The Subcontractor/Supplier shall not, however, be

---

[27] *Smith Trust*, 480 Mich at 24.

[28] *Id.*

[29] *Lukazewski v Sovereign Camp, WOW*, 270 Mich 415, 420; 259 NW 307 (1935).

[30] *Grand Trunk W R, Inc v Auto Warehousing Co*, 262 Mich App 345, 356-357; 686 NW2d 756 (2004).

[31] *Id.* at 353.

obligated to indemnify Miller-Davis Company for any damage or injuries caused by or resulting from the sole negligence of Miller-Davis Company.[32]

The plain language of this clause is inclusive.[33] The clause uses the terms "all" or "any," which provide for the broadest possible obligation to indemnify.[34]

The language used by the parties in contracting for indemnity is unambiguous and clearly intended to apply as broadly as possible. Nevertheless, the Court of Appeals determined that the indemnity clauses were inapplicable because "no one had brought a claim or demand against plaintiff within the meaning of the indemnification clause."[35] While the indemnity clauses specifically mention a "claim," they also trigger liability more broadly, when "damages, losses, demands," or "expenses," result from "any act, omission, fault, negligence, or breach . . . ." Furthermore, the definition of "claim" itself is broad. *Black's Law Dictionary* defines a claim as the "aggregate of operative facts giving rise to a right *enforceable* by a court," and "any *right* to payment or to an equitable

---

[32] Emphasis added.

[33] Indeed, another clause provides:

> You [Ahrens] agree to defend and save harmless and to indemnify MILLER-DAVIS COMPANY from *any and all* liens or claims *arising out of* the performance or fulfillment of this order and to furnish such guarantees as may be required, as to workmanship and materials. (Emphasis added.)

[34] *Pritts v J I Case Co*, 108 Mich App 22, 30; 310 NW2d 261 (1981) ("[T]here cannot be any broader classification than the word 'all.' In its ordinary and natural meaning, the word 'all' leaves no room for exceptions.") (citations and quotation marks omitted).

[35] *Miller-Davis (On Remand)*, 296 Mich App at 69.

remedy . . . ."[36]  Moreover, AIA A201, § 4.3.1, incorporated into the subcontract, defines a claim as "a demand or assertion by one of the parties seeking, as a matter of right, . . . relief with respect to the terms of the Contract," as well as "other disputes and matters in question . . . arising out of or relating to the Contract."  It further requires any claims to be made in writing.

To determine whether Sherman Lake YMCA made a written claim or demand against Miller-Davis, we look to the Agreement for Corrective Work they entered into. That agreement specified that Miller-Davis "acknowledges it has responsibility to correct work or replace materials that are not in compliance with the contract documents" and that "subcontractor Ahrens did not install one or more components of the Roof System in accordance with the Owner-Contractor contract documents."  The purpose of the agreement was to "avoid differences or any dispute that may be time consuming, financially expensive and/or not in the best interest of any of [the parties] or the users of the Project," and it goes on to outline "the rights and obligations" of the parties. "Nothing herein," it continues, "shall . . . release any rights of claim the Owner, and/or the Contractor may now have or hereafter acquire against any third person regarding responsibility for the NMP . . . ."  The agreement termed this course of action a "compromise, settlement and accord . . . to effect a settlement of contested claims."

A straightforward reading of the Agreement for Corrective Work confirms that Sherman Lake YMCA possessed a claim or demand against Miller-Davis that was resolved—at Miller-Davis's expense—by this settlement between them.  That Sherman

_____

[36] *Black's Law Dictionary* (9th ed), pp 281-282 (emphasis added).

13

Lake YMCA and Miller-Davis succeeded in resolving their dispute without resort to legal action does not alter Ahrens's obligation to indemnify Miller-Davis for the corrective work it was required to undertake in light of Ahrens's default. The indemnity provisions do not require Sherman Lake YMCA to prove liability or initiate a lawsuit or arbitration proceeding against Miller-Davis for Miller-Davis to seek indemnification from Ahrens for the corrective work it performed under the Agreement, nor do we see any question regarding the reasonableness of that agreed-upon work or Miller-Davis's liability to Sherman Lake YMCA for it.[37] As a result, we hold that the indemnity clauses of the subcontract apply to Miller-Davis's corrective work.[38]

## B. CAUSATION

We turn next to the Court of Appeals' conclusion that Miller-Davis is not entitled to indemnification because it has failed to sufficiently demonstrate that Ahrens's nonconforming work caused the NMP.[39] As the Court of Appeals recognized, causation

---

[37] See *Grand Trunk*, 262 Mich App at 354-355.

[38] Miller-Davis argues that it is entitled to attorney fees under the indemnification clauses. Because the trial court and the Court of Appeals determined that Miller-Davis did not establish a breach of the indemnification clauses, they did not consider whether Miller-Davis was entitled to attorney fees under the clauses. We decline to address this argument in the first instance and make no determination whether Miller-Davis is entitled to attorney fees under the relevant indemnification clauses. Instead, we remand to the trial court for further consideration of this issue.

[39] *Miller-Davis (On Remand)*, 296 Mich App at 71-72 ("The specific weakness in plaintiff's case is the lack of evidence to causally link defendant's alleged nonconforming workmanship to the moisture problem, which is the basis for plaintiff's claim for damages in the form of expenses to correct the cold-weather condensation problem in the YMCA's natatorium.").

14

of damages is an essential element of any breach of contract action, including an action for indemnity.[40] A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach.[41]

The Court of Appeals, however, misconstrued the relevant causation inquiry. There is no dispute that Miller-Davis incurred costs in undertaking the corrective work that Ahrens refused to perform, and that Miller-Davis has claimed those costs as damages. Therefore, to the extent that Ahrens was obligated to indemnify Miller-Davis for the costs of the corrective work, its breach of that obligation caused Miller-Davis's claimed damages. Whether Ahrens's nonconforming work caused the NMP is not relevant to this analysis.

Nor do the terms of the subcontract require Miller-Davis to show that Ahrens caused the NMP. Under the subcontract, Ahrens is obligated to indemnify Miller-Davis for, among other things, all claims and demands made or brought against Miller-Davis "by reasons of or resulting from, but not limited to, any injury, damage, loss, or occurrence arising out of or resulting from the performance of execution of [the subcontract] and caused, in whole or in part, by any act, omission, fault, negligence, or breach of the conditions of this [subcontract] by" Ahrens. At no point did Sherman Lake YMCA demand, or Miller-Davis guarantee, to correct the NMP. Indeed, the Agreement

---

[40] *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 69; 761 NW2d 832 (2008).

[41] *Stevenson v Brotherhoods Mut Benefit*, 312 Mich 81, 90-91; 19 NW2d 494 (1945).

15

for Corrective Work made clear that Miller-Davis did not concede that Ahrens's work caused the NMP: "The Contractor does not acknowledge that its or any subcontractor's non-conforming work or materials were or are a contributing or the sole cause of the NMP." Rather, Miller-Davis acknowledged only that it "has the responsibility for construction of the Project in accordance with the Owner-Contractor contract documents" under the Agreement for Corrective work, never promising to resolve the NMP. Correspondingly, Miller-Davis maintained at trial and throughout its communication with Ahrens that it does not know whether Ahrens's workmanship caused the NMP.

Ahrens, for its part, was obligated to install the roof system in accordance with the plans and specifications and to correct any nonconforming installation, regardless of whether its nonconforming work caused the NMP.[42] Accordingly, as the terms of the subcontract and the Agreement for Corrective Work make clear, Miller-Davis was only obligated, in light of Ahrens's default, to correct Ahrens's nonconforming work; whether such correction resolved the NMP is separate from the question whether Ahrens's nonconforming work caused Miller-Davis damages for which it could seek indemnification.

Miller-Davis has shown that Ahrens's failure to undertake corrective work caused those damages by way of Sherman Lake YMCA's demand that Miller-Davis itself correct the work.[43] Ahrens's refusal to correct its nonconforming work was a "but for" cause of the Agreement for Corrective Work, which passed liability for that work on to Miller-

---

[42] AIA A201, § 12.2.1-2.

[43] See Part III(A) of this opinion.

Davis. Miller-Davis's duty to undertake the corrective-work obligation shirked by Ahrens resulted in the out-of-pocket expenses—"damages" or "losses"—sustained by Miller-Davis in the course of reinstalling the roof. Because Miller-Davis presented sufficient evidence to establish that Ahrens's breach of the indemnity clauses caused its losses in correcting Ahrens's work, Miller-Davis is entitled to damages in the amount of its losses.[44] We therefore reverse the Court of Appeals' contrary conclusion.

## C. STATUTE OF LIMITATIONS

Nevertheless, Ahrens also asserts that Miller-Davis brought its breach of contract action beyond the relevant limitations period. MCL 600.5807(8) provides that "[n]o person may bring or maintain an action to recover damages or sums due for breach of contract . . . unless, after the claim first accrued . . . , he commences the action within . . . 6 years . . . ."[45] The six-year limitation of MCL 600.5807(8) begins to run "when the

---

[44] Ahrens stresses that the corrective work performed by Miller-Davis went beyond that specifically required by the original plans and specifications. We see no clear error, however, in the circuit court's conclusion that these additional measures were necessary to mitigate the expense of correcting Ahrens's nonconforming work. Likewise, even though the inquiry has no bearing here, we see no clear error in the circuit court's determination that Ahrens's nonconforming work caused the NMP; contrary to the Court of Appeals' suggestion, this determination was not based simply on "an inference drawn from the fact that after the corrective work the problem was not present," but rather was supported by dozens of exhibits and the testimony of numerous witnesses.

[45] MCL 600.5807(8).

promisor fails to perform under the contract."[46] A specific action for indemnification against losses accrues "when the indemnitee [has] sustained the loss."[47]

The Court of Appeals examined the subcontract to determine the wrong on which Miller-Davis's claims were based, explaining that the "underlying basis" for its claims was Ahrens's breach of the contract provision that " '[a]ll materials and/or work furnished on this order shall comply with the terms and the requirements of the plans and specifications . . . .' "[48] As a result, the Court of Appeals held that the wrong that provided the basis for Miller-Davis's complaint "must have occurred on or before defendant completed its portion of the overall construction project."[49] This analysis fails to recognize that Ahrens *twice* breached the contract: first, when it failed to install the roof system in accordance with the relevant plans and specifications, and then later when it refused to indemnify Miller-Davis for the corrective work required to remedy its nonconforming installation.

While these contract claims were both based on terms within the same agreement, nothing in MCL 600.5807 or our contract-law principles compels the conclusion that the claims must therefore share a common point of accrual. Rather, the date of accrual for

---

[46] *Cordova Chem Co v Dep't of Natural Resources*, 212 Mich App 144, 153; 536 NW2d 860 (1995).

[47] *Ins Co of North America v Southeastern Electric Co Inc*, 405 Mich 554, 557; 275 NW2d 255 (1979).

[48] *Miller-Davis (On Remand)*, 296 Mich App at 60-61.

[49] *Id.* at 61, citing *Employers Mut Cas Co v Petroleum Equip, Inc*, 190 Mich App 57, 63; 475 NW2d 418 (1991).

18

the breach of an indemnified promise does not serve as the date of accrual for an indemnity action. These separate breaches have logically distinct points of accrual.[50]

Ahrens first failed to perform under the contract when it installed a roof that did not conform to plan specifications. The cause of action for *this* breach accrued by April 1999, when Miller-Davis made its last payment to Ahrens under the subcontract. This occurred more than six years before Miller-Davis brought suit in May 2005. As a result, Miller-Davis's cause of action for breach of Ahrens's promise to install a roof conforming to plan specifications is barred by MCL 600.5807(8).

However, Ahrens's breach of the indemnity provision provides an independent basis for Miller-Davis's current indemnification claim. This breach necessarily occurred *after* Ahrens's breach of the underlying promise to conform its work to the subcontract's specifications. This is because no demand or claim upon Miller-Davis could trigger Ahrens's obligation to indemnify until *after* Ahrens had breached its promise to install the roof system according to the specifications. Miller-Davis offers three potential points of first accrual for this claim: February 26, 2003 (when Miller-Davis conducted a partial tear-off of the roof and discovered the nonconforming work); August 27, 2003 (when Miller-Davis settled Sherman Lake YMCA's claims via the Agreement for Corrective Work); and December 8, 2003 (when an independent engineering firm certified that Miller-Davis had corrected Ahrens's defective work). We need not decide which of these dates marks the accrual of Miller-Davis's cause of action for indemnity because we agree the claim did not accrue before February 2003 and Miller-Davis's May 2005 complaint

---

[50] *Ins Co of North America*, 405 Mich at 557.

19

was therefore well within the six-year period of limitations. Accordingly, we hold that Miller-Davis's indemnification claim was not barred by MCL 600.5807(8).

## IV. CONCLUSION

The Court of Appeals erred by concluding that the indemnity clauses in the parties' subcontract were inapplicable because no third party made a claim or demand upon Miller-Davis. Rather, Miller-Davis entered into the Agreement for Corrective Work with Sherman Lake YMCA that clearly established Sherman Lake YMCA's claim against Miller-Davis that Ahrens's installation of the natatorium did not conform to the subcontract's specifications. Miller-Davis's indemnity claim for Ahrens's failure to undertake corrective work is logically distinct from its breach of contract claim for Ahrens's faulty installation of the roof system, and necessarily accrued at a later point. As such, the Court of Appeals further erred to the extent it held that Miller-Davis's indemnity claim was barred by MCL 600.5807(8) because it accrued on the date of substantial completion.

Because Sherman Lake YMCA made a claim or demand upon Miller-Davis for corrective work which Ahrens was obligated to perform, and Ahrens refused to indemnify Miller-Davis for undertaking that work, Miller-Davis has established that Ahrens caused its damages. We therefore reverse that portion of the Court of Appeals' opinion discussing Miller-Davis's indemnity claim, and remand this case to the

20

Kalamazoo Circuit Court for entry of judgment in Miller-Davis's favor and to determine whether Miller-Davis is entitled to attorney's fees under the relevant indemnification clauses.

Mary Beth Kelly
Robert P. Young, Jr.
Michael F. Cavanagh
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

21