NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0632n.06

Case No. 19-1439

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

FILED
Dec 20, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| S.D. BENNER, LLC, a Michigan limited liability company; S.D. BENNER III, LLC, a Michigan limited liability company, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellants, | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| v. | ) | MICHIGAN |
| | ) | |
| BRADLEY COMPANY, LLC, an Indiana corporation, | ) ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. S.D. Benner and S.D. Benner III claim that their former real estate broker, Bradley Company, caused them to lose millions of dollars of property. But the Benner companies haven't shown that Bradley's misconduct (if any) caused their damages (if any). The trial court entered summary judgment for Bradley. We affirm.

The Benner companies once owned twenty-two commercial properties around Grand Rapids, Michigan. About a decade ago, the companies filed for bankruptcy. During the bankruptcy proceedings, they negotiated a settlement with their primary creditor, Comerica Bank, under which the bank agreed to forgive their outstanding debt if they paid $18.75 million within the next five months. But if the companies failed to meet this deadline, Comerica had the right to take the properties.

Around the same time, the Benner companies entered into a listing agreement with Bradley to market ten of the properties—seven for sale, three for lease. After some delay, Bradley did so. But it never successfully sold or leased any of the properties.

On the day of the settlement deadline, the Benner companies told the bankruptcy judge in their case that they had obtained refinancing from a third party. But the purported refinancing never came through. In the end, the companies failed to meet the settlement deadline. So they lost all twenty-two properties.

Over the next few months, Comerica provided information about the properties to various potential buyers. Eventually, an affiliate of Great Lakes Capital (a company that shared common ownership with Bradley) bought the bank's rights to the properties at a significant discount.

The Benner companies then sued Bradley for breach of contract and breach of fiduciary duty (among other claims not relevant here). The trial court granted summary judgment to Bradley. We review that decision de novo. *See Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015).

For both the contract and fiduciary claims, the Benner companies must show (1) the breach of a legal duty, (2) causation, and (3) damages. *See Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014); *Sunnyside Resort Condo. Ass'n v. Beckman*, No. 341116, 2019 WL 1780630, at *6 (Mich. Ct. App. Apr. 23, 2019). To simplify matters, let's assume for the sake of argument that the companies have offered evidence of breach and damages. The problem is that there's no evidence of causation.

To see why, consider the theories of breach and damages. As for breach, the companies claim that Bradley didn't use its "best efforts" to market the properties and that it disclosed

confidential information to Great Lake Capital. As for damages, the companies say that they lost significant equity in the properties when they defaulted under the settlement agreement

Yet the Benner companies never connected the alleged breach to the alleged damages. The companies had to show that any breach was both the but-for and proximate cause of their damages. *See Sunnyside Resort Condo. Ass'n*, 2019 WL 1780630, at *6; *Best Team Ever, Inc. v. Prentice*, No. 319026, 2015 WL 3874477, at *6 (Mich. Ct. App. June 23, 2015). At a minimum, then, the companies needed *some* evidence showing that, if Bradley had honored its contractual and fiduciary duties, then they wouldn't have lost their properties because they would have paid $18.75 million to Comerica by the settlement deadline. But the companies haven't offered any evidence to that effect.

Take the theory that Bradley didn't use its "best efforts" to market the properties. The Benner companies point out that Bradley waited around two months before listing any of the properties. But the companies haven't offered evidence that any of the properties would have been sold or leased if Bradley had listed them sooner. For instance, the companies haven't pointed to anyone who might have been interested in the properties at the listed prices. Nor have they offered any expert testimony to show that sales would have occurred. Indeed, just a year earlier, the companies had tried to sell the very same properties—without success. Of course, someone (an affiliate of Great Lakes Capital) eventually bought the properties. But it did so during a later period and at a significant discount. So this fact doesn't show that any of the properties could have been sold during the relevant period and at the listed prices. And without these sales, the Benner companies still would have lost the properties because they wouldn't have paid $18.75 million by the settlement deadline.

Even so, let's assume that there were potential buyers out there just waiting to be found. The Benner companies still haven't shown that these sales would have prevented their default. According to their own evidence, the seven properties listed for sale were worth a bit under $11 million—at the very most.[1] So even if the companies had sold all the listed properties, they would have owed Comerica another $7.75 million. True, the leased properties could have brought in a little more money. Unfortunately, the Benner companies haven't offered any real evidence about how much. At best, the listings agreements—which reflect how much the companies wanted for the leases, not how much the leases were actually worth—suggest that the properties might have brought in a sum in the mid-five figures each month. Multiply that sum by four months (about how long Bradley had to lease the properties) and the companies *still* would have fallen millions of dollars short of what they owed under the settlement agreement.

Nor have the Benner companies offered anything else to show how Bradley's "best efforts" might have changed matters. For instance, the companies haven't pointed to any evidence that they would have obtained refinancing if some properties had been sold or leased. All this means that the companies haven't shown causation. By all appearances, they would have lost the properties even if Bradley had used its "best efforts."

The other theory of breach fares even worse. The companies claim that Bradley disclosed confidential information to Great Lakes Capital. But again, they haven't offered any evidence that this purported violation caused their default under the settlement agreement. In fact, it's hard to imagine *how* the disclosure of the information could have done so. In sum, the companies haven't

---

[1] To be clear, this figure requires some pretty generous assumptions. Specifically, we adopted the highest value for each property based on the separate valuations done by Comerica and a third party as well as the prices in the listing agreements with Bradley. And we did so even though the listing prices may not reflect the true value of the properties. Bradley's brief proposed a much lower figure in part because the company couldn't find a valuation for the property at 4076 Alpine. But that's because 4076 Alpine was also called 4020 Alpine—at least according to the settlement agreement. The Benner companies did offer valuations under that property name.

pointed to any evidence of causation. So the trial court correctly granted summary judgment to Bradley. *See Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007).

One last point: the Benner companies say (at least in passing) that Bradley promised to look into refinancing options for them and that this promise dissuaded them from looking into options on their own. But the trial court held that the parties had never entered into an express or implied contract to this effect. And the companies don't challenge that conclusion on appeal. Nor did they offer any real argument—either in the district court or on appeal—that Bradley breached its fiduciary duties when it allegedly made this promise. So the companies have forfeited any claim on this front. *See Doe v. Miami Univ.*, 882 F.3d 579, 594–95 (6th Cir. 2018).

We affirm.