*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VINCENT JOHNSON, PISTON GROUP, LLC,
PISTON AUTOMOTIVE, LLC, DETROIT
THERMAL SYSTEMS, LLC, IRVIN
AUTOMOTIVE PRODUCTS, LLC, and AIREA,
INC.,

        Plaintiffs-Appellees,

v

MICHIGAN MINORITY PURCHASING
COUNCIL, doing business as MICHIGAN
MINORITY SUPPLIER DEVELOPMENT
COUNCIL,

        Defendant-Appellant,

and

MICHELLE ROBINSON,

        Defendant.

PUBLISHED
March 3, 2022

No. 357979
Wayne Circuit Court
LC No. 21-006110-CB

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

SHAPIRO, J. (*concurring*).

I concur in the result. However, I disagree with the majority's reading of the indemnity clause in the agreement. I agree with the trial court's view, which reads as follows:

> In considering this motion, the Court first rejects Defendants' interpretation of the "hold harmless" provisions of the Certification Applications. Those provisions impose clear and unequivocal indemnification obligations on the applicant in the event that Defendants face liability to third-parties arising out of the certification of the application. Very little of that language, however, supports

the broad interpretation suggested by Defendants, i.e., that by applying for certification, the applicant essentially grants Defendants a license to tort[i]ously interfere with the applicant's business relations. Furthermore, if such language could be interpreted as Defendants suggest, it stands to reason that there would be examples from case law where a tortfeasor was able to defeat its victim's claims on this basis. Defendants, however, do not cite such authority. Rather, Defendants rely exclusively on a case (*Miller-Davis*[1]) addressing whether an indemnitee had, in fact, incurred the liability it attributed to the indemnitor; and a case (*Hecht*[2]) interpreting the admissibility of evidence in light of the statutory requirements of MCL 380.1230b, neither of which suggest in any way that the indemnification provisions at issue here can be interpreted as Defendants suggest. Thus, the indemnification provisions of the Certification Application do little to undermine Plaintiffs' likelihood of success on the merits.[3]

The majority notes that the provision in question contains two clauses, one stating that the employee agrees to "hold [the MMSDC] free and harmless from any and all claims, demands, and damages" and the other stating that he "agrees to indemnify and hold [the MMSDC] harmless for any and all liability in connection with the certification." The majority concludes that these two phrases constitute separate contractual provisions and defines the former as a release of all claims by plaintiff against defendant. I do not agree. Whether and how these clauses are distinct is far from clear, particularly since neither the term "release" nor the phrase "covenant not to sue" appears in the agreement. Accordingly, I would hold that the agreement is not a bar to plaintiff's suit or that at most there is an ambiguity that should be resolved in favor of the non-drafter. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003).

/s/ Douglas B. Shapiro

---

[1] *Miller-Davis v Ahrens Constr, Inc*, 495 Mich 161; 848 NW2d 95 (2014).

[2] *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 596; 886 NW2d 135 (2016).

[3] This is consistent with *Black's Law Dictionary* (11th ed) definition of "hold harmless agreement," which reads, "A contract in which one party agrees to indemnify the other."