*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTINE ROSE STONISCH,

Plaintiff-Appellant,

v

RUDOLPH THEODORE STONISCH,

Defendant-Appellee.

UNPUBLISHED
September 28, 2023

No. 362982
Oakland Family Division
LC No. 2018-864749-DM

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Plaintiff, Christine Stonisch, appeals as of right the trial court order confirming an arbitration award in favor of defendant, Rudolph Stonisch. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

The parties married in 2001, and have three children. In July 2018, Christine filed a complaint for divorce. The parties reached a confidential settlement agreement in June 2019. Thereafter, the terms of the confidential settlement agreement were merged and incorporated into the parties' August 1, 2019 consent judgment of divorce. The parties agreed to joint legal and physical custody of their children. As it relates to child support, the parties agreed that "in lieu of paying child support, [Rudolph] will maintain the financial status quo as set forth" in the confidential settlement agreement until the "status quo period" ends. As it relates to spousal support, the judgment provided that for 6.5 years, Rudolph would pay $12,000 per month in spousal support to Christine. However, during the status quo period "the $12,000 per month payment will be satisfied by (1) paying directly to [Christine] $7,500 per month, and (2) paying the other Status Quo expenses set forth in the agreement."

The parties further agreed that an arbitrator would arbitrate any disputes (other than custody and parenting time) arising from the confidential settlement agreement. Relevant to this appeal, on July 23, 2021, Christine requested arbitration, alleging that Rudolph had breached the confidential settlement agreement "multiple" times by failing to pay status quo mortgage

payments, which resulted in foreclosure's and a sheriff's sale of the parties marital home and other real estate.

On June 2, 2022, the arbitrator issued a final opinion and award regarding post-judgment arbitration. The arbitrator determined that the amount of debt to deduct from the purchase price of the marital house was $3,398,584 for two mortgages held by Rudolph's mother's trust plus $576,345 for the "Gregory" mortgage.

Additionally, the arbitrator found that Rudolph had breached the confidential settlement agreement by failing to make the mortgage payments on the marital home and on another property. The arbitrator noted that the failure to pay the mortgages resulted in the properties being foreclosed upon; however, he rejected Christine's argument that the breach (i.e., failing to pay the mortgages) resulted in the properties being sold for substantially less money. The arbitrator recognized that, under the confidential settlement agreement, Christine had agreed that Rudolph would pay a reduced sum of money in spousal support and child support for the duration of the status quo period. But he rejected Christine's argument that, because of Rudolph's breach of the settlement agreement, the status quo period should be deemed to have ended in April 2019 and she should receive the full payment of the child support and spousal support.

On June 23, 2022, Christine moved to partially vacate the arbitrator's award. She contended that the arbitrator exceeded his powers by (1) acting beyond the material terms of the agreement and the judgment of divorce and (2) by violating controlling law. Following a hearing, the trial court denied the motion to vacate the arbitrator's award and, subsequently, entered a final order affirming the arbitrator's judgment.

## II. MOTION TO VACATE ARBITRATION AWARD

### A. STANDARD OF REVIEW

Christine argues that the trial court erred by not setting aside the arbitration award.[1] We review de novo a trial court's decision to deny a motion to vacate or modify an arbitration award. *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). Consequently, no deference is extended to the trial court's decision. *Id*. Moreover, judicial review of domestic relations arbitration awards "is usually extremely limited." *Id*. As it relates to a domestic relations arbitration award, our Legislature has provided four limited circumstances under which such an award may be vacated. See MCL 600.5081(2). As relevant to this case, under MCL 600.5081(2)(b), an award may be vacated if "[t]he arbitrator exceeded his or her powers." This Court reviews de novo whether the arbitrator exceeded his or her powers. *Washington*, 283 Mich App at 672. "[A] party seeking to prove that a domestic relations arbitrator exceeded his or her

---

[1] In his brief on appeal, Rudolph argues that this Court should dismiss Christine's appeal for lack of jurisdiction because the court's order confirming the arbitrator's award was not a final order under MCR 7.202(6)(a). However, he raised the same argument in a motion to dismiss filed with this Court. We denied that motion. *Stonisch v Stonisch*, unpublished order of the Court of Appeals, entered February 2, 2023 (Docket No. 362982). We decline Rudolph's invitation to reconsider our prior decision.

authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law." *Id*. No review of the arbitrator's factual findings is permitted. *Id*. Further, "any error of law must be discernible on the fact of the award itself," i.e., it must be a legal error "that is evident without scrutiny of intermediate mental indicia." *Id*. (quotation marks and citation omitted). "Finally, in order to vacate an arbitration award, any error of law must be so substantial that, but for the error, the award would have been substantially different." *Id*.

## B. ANALYSIS

### 1. ACTIONS BEYOND THE MARITAL TERMS OF THE SETTLEMENT AGREEMENT

Christine first argues that the arbitrator exceeded his authority because he acted beyond the marital terms of the confidential settlement agreement. Specifically, she argues that the settlement agreement unambiguously provides that $3,398,584 will be deducted from the proceeds of the sale of the marital house, and that Rudolph will be 100% responsible for any additional indebtedness. The arbitrator, however, deducted the $3,398,584 plus $576,345 for what the parties refer to as the Gregory mortgage. In response, Rudolph argues that the arbitrator did not act beyond the scope of the agreement. Rather, the arbitrator found the agreement to be ambiguous and then relied upon parol evidence to interpret it.

A reviewing court must accept the arbitrator's factual findings and decisions on the merits, and it cannot engage in contractual interpretation because that is an issue reserved for the arbitrator. *Ann Arbor v AFSCME*, 284 Mich App 126, 144; 771 NW2d 843 (2009). "Thus, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court may not overturn the decision even if convinced that the arbitrator committed a serious error." *Id*. (quotation marks and citation omitted).

Here, the settlement agreement provided, in relevant part:

e) **Calculation of [marital house] Net Sale Proceeds**:

Contemporaneously with the closing of the sale of the [marital house], the following liabilities (which [Rudolph] represents encumbers [the marital house]) will be paid from the gross [marital house] sale proceeds:

i) Customary costs of sale, including realtor commissions and fees;

ii) The then-current remaining outstanding balance owed on Gregory Funding Mortgage #316448-461 in the amount of $576,345.63 as of April 30, 2019;

iii) The then-current remaining outstanding balance which actually still is owed on the mortgage to Glorie Stonisch, #Libor 41706, page 611, Oakland County Records, in the initial amount of $1,500,000; and

iv) The then-current remaining outstanding balance which actually still is owed on the mortgage to Glorie Stonisch, #Libor 41713, page 411, Oakland County Records, in the initial amount of $2,105,000.

*v*) As to items ii, iii and iv, above, [Rudolph] shall provide, and [Christine] shall have the right to discover, the current outstanding principal balances (inclusive of any accrued interest) which is $3,398,584 as of April 30, 2019, with interest accruing at 4% annually for each mortgage (which assumes no additional payments will be made until the home is sold) (the "Mortgage Balances"). To the extent that the amount due under items ii, iii, and iv above is greater than the above-listed Mortgage Balances, [Rudolph] shall be 100% responsible for any liability above and beyond those amounts disclosed above. [Footnote omitted].

In the proceedings before the arbitrator, Christine argued that the above section was unambiguous, but Rudolph argued that it was ambiguous and presented parol evidence in support of his interpretation of it. Thereafter, when interpreting this section, the arbitrator found:

The amount of debt to be deducted is $3,398,584 plus $576,345 (the Gregory mortgage). [Christine] is correct that [Rudolph] was responsible for any increase in the mortgage amount with the trust above $3,398,584. That amount is specifically listed in the [settlement agreement]. While not artfully drafted, at no point did [the parties] agree that the other mortgage listed in the [settlement agreement] would be [Rudolph's] sole responsibility, i.e., the Gregory mortgage. Rather, at the time that the [settlement agreement] was drafted, [Christine] was relying upon [Rudolph's] representation that the mortgage balance to his mother's trust was $3,398,584 and to the extent that amount was higher, [Rudolph] would be responsible for any higher amounts.

The arbitrator clearly interpreted the agreement as providing that the $3,398,584 was the mortgage balance as of April 30, 2019 on the two mortgages owed to Rudolph's mother's trust. He then determined that there was no language in the agreement indicating that Rudolph would be solely responsible for the Gregory mortgage balance. We conclude that because the arbitrator was arguably construing or applying the contractual language, there is no basis to vacate this part of the arbitration award. See *City of Ann Arbor*, 284 Mich App at 144. Rather, under the circumstances, the arbitrator's determination that the $3,398,584 for the trust mortgages and $576,345 for the Gregory mortgage would be deducted from the sale proceeds from the marital house was a factual finding to be made by the arbitrator. Factual findings by an arbitrator are not subject to judicial review. *Id*. at 148. Consequently, we conclude that the trial court did not err by denying Christine's motion to vacate this aspect of the arbitration award.

2. ACTIONS IN CONTRAVENTION OF CONTROLLING LAW

Christine next argues that the arbitrator's award was in contravention of controlling law because, despite finding that Rudolph breached the confidential settlement agreement, the arbitrator gave Rudolph a monetary "credit" for his partial performance of the agreement. We disagree.

"A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract." *In re Lett Estate*, 314 Mich App 587, 599; 887 NW2d 807 (2016). "The same legal principles that generally govern the construction and interpretation of contracts also govern a settlement agreement in a judgment of divorce." *Id*. To establish a breach of contract

claim, the plaintiff must prove "by a preponderance of the evidence that (1) that there was a contract (2) which the other party breached the contract (3) thereby resulting damages to the party claiming the breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).  Here, the arbitrator found that there was an agreement and that Rudolph breached it.  However, the court did not find that Christine had established that she sustained damages as a result of the breach.  Rather, the arbitrator found that she was only entitled to the benefit of her bargain, and that she had received that benefit because she did not have to pay any expenses during the status quo period.  In doing so, the arbitrator found (1) that Christine had availed herself of the status quo by filing a post-settlement arbitration demand to compel payments due under the status quo, (2) that if the status quo were deemed to have ended then any payments Rudolph made under the agreement would operate as a credit against the amounts due, and (3) that Christine would have been responsible for maintaining a residence and paying all costs associated with it after the sale of the marital home.  Ultimately, the arbitrator found that the pecuniary value of the benefit that Christine received during the status quo period was equal to or greater than the money that she gave up under the confidential settlement agreement.  Whether the arbitrator was correct in finding no damages resulting from Rudolph's breach is beyond the scope of this Court's review.  See *Washington*, 283 Mich App at 672.

Affirmed.  Rudolph may tax costs as the prevailing party.  MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron