STATE of North Dakota, Plaintiff and Appellee,

v.

Karen L. SORENSEN, Defendant and Appellant.

STATE of North Dakota, Plaintiff and Appellee,

v.

Sharon L. IRWIN, Defendant and Appellant.

STATE of North Dakota, Plaintiff and Appellee,

v.

Richard L. IRWIN, Defendant and Appellant.

Cr. Nos. 910377–910379.

Supreme Court of North Dakota.

March 19, 1992.

Peter B. Crary, Fargo, for defendant and appellant.

John T. Goff, State's Atty., Fargo, for plaintiff and appellee.

LEVINE, Justice.

Karen L. Sorensen, Sharon L. Irwin and Richard L. Irwin appeal from separate orders of the Cass County court denying their motions to credit the time they were sentenced to serve for their convictions of trespass with the time they spent in custody as a result of another charge of trespass. We affirm.

On March 29, 1991, Sorensen and the Irwins, along with twenty-three others, entered the property of the Women's Health Organization in Fargo. Defendants and their cohorts separated into groups of two or three and fastened themselves to one another with bicycle locks. Defendants were arrested and incarcerated in the Cass County jail. Defendants were charged with criminal trespass and physical obstruction of a governmental function, both Class A misdemeanors. The Irwins were released on bail on March 30, 1991, and Sorensen on April 1, 1991.

On June 14, 1991, defendants again entered the property of the Women's Health Organization in Fargo. They were again arrested, again charged with criminal trespass and again incarcerated in the Cass County jail. This time they were not released on bail. They remained incarcerated to await trial of the second trespass charge. From July 22, 1991 to July 24, 1991, a jury trial was held on the March trespass and obstruction charges. The defendants were convicted on each count of trespass and obstruction. Sorensen was sentenced to two concurrent nine-month terms at the State Penitentiary; Sharon Irwin was sentenced to two concurrent eight-month terms at the State Penitentiary; Richard Irwin was sentenced to two concurrent nine-month terms at the Missouri River Correctional Center. Defendants received credit only for the time they were incarcerated immediately following their March arrests. They did not receive credit for the time they spent in jail following their second arrests for their repeated trespass in June. After sentencing, the county court revoked defendants' bail for the March trespass and obstruction charges.

Eventually, the State dropped the June 14, 1991 trespass charges against the defendants "to preserve limited prosecutorial and judicial resources." Defendants moved, under Rule 35, NDRCrimP,[1] to re-

---

1. Rule 35, NDRCrimP, says:

"(a) Correction of sentence. The sentencing court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

"(b) Reduction of sentence. The sentencing court may reduce a sentence within 120 days after the sentence is imposed or probation is

ceive credit to their sentences for all time served in jail, including the time served after the June arrests. They argued that they were entitled to credit by virtue of a 1989 amendment to NDCC § 12.1–32–02(2). The county court denied the motion and this consolidated appeal followed.

NDCC § 12.1–32–02(2), as amended in 1989, says:

"Credit against any sentence to a term of imprisonment shall must be given by the court to a defendant for all time spent in custody as a result of the criminal charge for which the sentence was imposed, or as a result of the conduct on which such charge was based. 'Time spent in custody' shall include includes time spent in custody in a jail or mental institution for the offense charged, whether that time is spent prior to trial during trial, pending sentence, or pending appeal." S.L.1989, ch. 158 § 2. (Overstrike indicates deletion, underscore indicates addition to statute.)

■ On appeal, defendants argue that, because they had the same purpose for each act of trespass and because their arrests for each violation occurred at the same location and as a result of the same type of conduct, NDCC § 12.1–32–02(2), as amended, requires they receive credit. We disagree.

■ The primary purpose of statutory construction is to ascertain the intent of the legislature. *State v. Coutts*, 364 N.W.2d 88 (N.D.1985). This court first determines legislative intent from the language of the statute, *State v. Nordquist*, 309 N.W.2d 109 (N.D.1981), giving such language its plain, ordinary and commonly understood meaning. *State v. Hersch*, 445 N.W.2d 626 (N.D.1989). A statute must be construed to avoid ludicrous and absurd results. *State v. Mees*, 272 N.W.2d 61

(N.D.1978). These principles of statutory construction guide our analysis.

In *State v. Eugene*, 340 N.W.2d 18 (N.D. 1983), we construed as unambiguous NDCC § 12.1–32–02(2) as it existed before its 1989 amendment. We said we could not disregard the clear language of the statute and held that credit for time served "is inappropriate for time served in connection with wholly unrelated charges based on conduct other than for which the defendant is ultimately sentenced." *Id.* at 35. *Accord, e.g., Schubert v. People*, 698 P.2d 788 (Colo.1985); *In re Rojas*, 23 Cal.3d 152, 151 Cal.Rptr. 649, 588 P.2d 789 (1979). Ordinarily, our holding in *Eugene, supra*, would be dispositive. However, defendants contend that, in 1989, the legislature amended NDCC § 12.1–32–02(2) to require that a sentence be reduced by any time served for separate similar offenses.

The defendants point out that the legislature replaced the auxiliary verb "shall" with "must", and "shall includes" with "includes". *See* NDCC § 12.1–32–02(2), amended 1989. These changes, they say, manifest an intention to limit the discretion of a trial judge by requiring the judge to credit the sentence for a conviction for an offense with the time spent in custody as the result of a separate but similar offense.

The plain, unambiguous language of NDCC § 12.1–32–02(2) requires that time spent in jail as a result of the conduct relating to the charge "must" be credited to a defendant's sentence. The change from "shall" to "must" is not substantive. On the contrary, the 1989 North Dakota Legislative Drafting Manual discloses that such changes are intended to achieve grammatical consistency throughout the Century Code. *See North Dakota Legislative Drafting Manual*, Part 7, Style and Grammar Guidelines, 111–32 (1989); *see also, generally* North Dakota Senate Rule 405

revoked, or within 120 days after receipt by that court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding a judgment of conviction or probation revocation. Changing a

sentence from a sentence of incarceration to a grant of probation constitutes a permissible reduction of sentence under this subdivision. Relief under this rule may be granted by the court only upon motion of a party or its own motion and notice to the parties. If the sentencing court grants relief under this rule, it shall state its reasons therefor in writing."

(1989) and North Dakota House Rule 405 (1989).

The Legislative Drafting Manual explains: "Use *shall* when you are imposing a duty on a person or body. Example: 'The licensee *shall* give the debtor a copy of the signed contract.' Use *must* to talk about a thing rather than a person and to express requirements, that is, statements about what people or things must be rather than what they must do. Examples: 'The contract *must* contain two signatures.' 'A candidate *must* be a resident of the county.'" *Legislative Drafting Manual, supra* at 112–13. (Emphasis in original.)

Because "credit" is a thing, not a person, and because credit is a requirement, use of the auxiliary verb "must", not "shall", is the preferable style. Likewise, the Legislative Drafting Manual shuns the use of "shall mean" and suggests, in its place, the transitive verb, "means". *Legislative Drafting Manual, supra* at 124. The legislature amended NDCC § 12.1–32–02(2) accordingly and changed "shall include" to "includes" and "shall" to "must". We conclude that the 1989 changes are merely stylistic, not substantive.

The plain language of the statute provides that credit for time served is given for "time spent in custody as a result of the criminal charge for which the sentence was imposed, or as a result of the *conduct* on which such charge was based." NDCC § 12.1–32–02(2) (emphasis added). Defendants were incarcerated from June 14, 1991 to July 24, 1991, not for their conduct on March 29, 1991, but for the failure to secure their release on bond for their conduct of June 14, 1991. It follows that the time spent in custody for which defendants seek credit was not time spent in custody "as a result of the conduct on which such charge was based," NDCC § 12.1–32–02(2), and the defendants are not entitled to receive credit.

Yet, defendants urge that the "conduct" relating to both the March and June arrests "was virtually identical—trespass," and therefore is the "same conduct" under NDCC § 12.1–32–02(2). Defendants' interpretation not only contradicts the ordinary meaning of the language but also leads to absurd results. Under defendants' construction, if a person committed burglary, was arrested and released on bail and later committed a second burglary at the same place, the sentence given for the first burglary would have to be reduced by the time spent in custody as a result of the second burglary. The accumulation of presentence incarceration credit for unrelated offenses would subvert the penalty component of our criminal law and would lead to the absurd result of reducing the penalty for the commission of a crime when it happens to be followed by commission of another separate, but similar, crime. We conclude that NDCC § 12.1–32–02(2) is unambiguous and does not require defendants to receive credit to their sentences for their March trespass convictions for time spent in custody as a result of the June trespass charges.

Accordingly, we affirm the order of the county court denying the motion to reduce the sentences.

ERICKSTAD, C.J., and VERNON R. PEDERSON, Surrogate Judge, and MESCHKE and VANDE WALLE, JJ., concur.

VERNON R. PEDERSON, Surrogate Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. Gierke III. Justice Johnson, not being a member of this Court at the time this case was heard, did not participate in this decision.