STATE of North Dakota, Plaintiff
and Appellee,

v.

Trent Douglas ERICKSON, Defendant
and Appellant.

Cr. No. 950040.

Supreme Court of North Dakota.

July 27, 1995.

Allen Albright, Asst. State Atty., Fargo, for plaintiff and appellee.

David Garaas, DeMores Office Park, Fargo, for defendant and appellant.

SANDSTROM, Justice.

We are asked to construe N.D.C.C. § 53–06.1–16.1, dealing with the use of a fraudulent scheme or technique to cheat or skim involving the game of twenty-one (sometimes referred to as "blackjack"). We hold the statute applies to the actions of a twenty-one dealer and affirm the judgment of the district court.

I

Trent Erickson was a twenty-one dealer employed by Red River Human Services at a

lounge in Fargo. After noticing the average net proceeds from twenty-one were not what other clubs in the state were making, Red River Human Services employed a private investigator to check for misconduct by its dealers. The investigator monitored the dealers by sitting in on games and by hidden cameras. The cameras recorded Erickson placing money into the locked box [1] in such a way that it could still be retrieved with the plunger, dropping the money on the floor, and picking it up. A plunger is used to push money into the locked box after players have purchased chips. The cameras also recorded Erickson treating tips as tip bets and doubling them after a player had won. A player places a tip bet by placing a tip for the dealer into a designated area on the gaming table. If a player wins that hand, the dealer can double the tip bet and place it in the tip jar. Erickson moved regular tips into the tip bet area.

The investigator approached Erickson about the misconduct. Erickson signed a brief statement admitting he had taken one hundred seventy dollars from Red River Human Services and agreed to make fifty dollar installments out of his paycheck. Erickson later explained this figure was just a guess of what he may have "inadvertently" taken in the past.

Based on this evidence, the State charged Erickson with a violation of N.D.C.C. § 53–06.1–16.1, for willfully using fraudulent techniques during the game of twenty-one. The State alleges Erickson stole money from the locked box used to hold players' money. The State also alleges Erickson used a fraudulent technique or scheme to double tips, when a player had not placed a tip bet.

Under Rule 11(a)(2), N.D.R.Crim.P., Erickson entered a conditional plea of guilty. Erickson first argues he did not commit a felony under N.D.C.C. § 53–06.1–16.1. Second, Erickson argues the district court erred by not suppressing evidence of the money taken from the locked box. Finally, Erick-son alleges the statute violates his due process and equal protection rights.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 29–28–06(2). The appeal was timely under Rule 4(b)(1), N.D.R.App.P.

## II

Erickson contends he did not commit a felony because he was not playing a game of twenty-one when he stole the money. He also argues he did not possess the specific intent necessary to commit a felony under N.D.C.C. § 53–06.1–16.1.

**"Bogus chips, marked cards, cheating devices, or fraudulent schemes unlawful—Penalty.** It is unlawful for any person playing or conducting any authorized game of chance conducted by a licensed organization:

1. To use bogus or counterfeit chips or pull tabs, or to substitute or use any game, cards, pull tabs, or game piece that have been marked or tampered with.

2. To employ or have on one's person any cheating device to facilitate cheating in any game of chance.

3. *To willfully use any fraudulent scheme or technique,* including when an operator or player of games of pull tabs directly or indirectly solicits, provides, or receives inside information of the status of a game for the benefit of either person.

4. To alter or counterfeit a site authorization, gaming license, or North Dakota gaming stamp.

5. To knowingly cause, aid, abet, or conspire with another person or to cause any person to violate this chapter or any rule adopted under this chapter.

A person violating this section is guilty of a class A misdemeanor unless the amount gained through the use of these items,

---

1. According to *Gambling in America,* Final Report of the Commission on the Review of the National Policy Toward Gambling, p. 94 (1976), the locked box attached to gambling tables is a crucial aspect of internal controls for gaming. The box is to be only unlocked after being removed to the counting room.

schemes, or techniques resulted in a person obtaining over five hundred dollars, then the offense is a class C felony. *However, if a person uses a fraudulent scheme regarding soliciting, providing, or receiving inside information involving the game of pull tabs or uses a fraudulent scheme or technique to cheat or skim involving the games of twenty-one or bingo, regardless of the amount gained, then the offense is a class C felony.*"

N.D.C.C. § 53–06.1–16.1 (emphasis added). A game of twenty-one is "a card game played by a maximum of seven players and one dealer." N.D.C.C. § 53–06.1–10.

■■■ The interpretation of a statute is a question of law fully reviewable on appeal. *State v. One Black 1989 Cadillac*, 522 N.W.2d 457, 460 (N.D.1994). We construe statutes as a whole to determine the intent of the legislature. *One Black 1989 Cadillac*. We construe statutes to avoid absurd and ludicrous results. *Tooley v. Alm*, 515 N.W.2d 137, 142 (N.D.1994); *State v. Sorensen*, 482 N.W.2d 596, 598 (N.D.1992).

### A

■■ Erickson concedes he used a fraudulent scheme or technique, but argues he did not use the scheme or technique "involving the game of twenty-one." He argues the statute only applies to fraudulent actions while playing the game, not those while betting or handling the money. We will not construe the statute so absurdly.

The commonly understood meaning of "involve" is "to include as a necessary circumstance, condition, or consequence; ...." *Random House Dictionary of the English Language*, 1005 (2d ed.1987). "Involving" is not limited to engaging in the activity. It merely requires the activity to be a necessary condition or circumstance. Erickson had access to the money because of his position as a dealer. Without the game of twenty-one, he would not have had an opportunity to steal the money. We hold the actions of a twenty-one dealer while handling money used in the game, involve the game of twenty-one.[2]

### B

■■ Erickson argues he did not specifically intend to cheat or skim the money. He contends "cheat or skim" is a specific intent that the State has not alleged or proven. The Information charged Erickson with willfully using a fraudulent scheme or technique or knowingly caused, aided, abetted, or conspired with another to violate the law. Specifically, it alleges Erickson willfully used fraudulent dealing techniques.

The words "cheat or skim" do not supply a specific-intent element. The advent of modern statutory violations has limited the necessity of a specific-intent requirement for theft crimes. *State v. Kraft*, 413 N.W.2d 303, 306 (N.D.1987). "Cheat or skim" merely highlights the fact the statute applies to both players and dealers of twenty-one. "Cheat" means "to practice fraud or deceit: ...." *Random House Dictionary of the English Language*, 351 (2d ed.1987). "Skim" means "to conceal a portion of (winnings, earnings, etc.) in order to avoid paying income taxes, commissions, or the like on the actual total revenue (sometimes fol. by *off*): *The casino skimmed two million a year....* to conceal gambling or other profits so as to avoid paying taxes, etc.; ...." *Random House Dictionary of the English Language*, 1792 (2d ed.1987). According to *Gambling in America*, Final Report of the Commission on the Review of the National Policy Toward Gambling, p. 86 (1976), "Skimming is the process whereby a portion of the casino revenues disappears from the official count."

A person who willfully uses any fraudulent scheme or technique in a game of chance is guilty of a class A misdemeanor if less than five hundred dollars is stolen. N.D.C.C. § 53–06.1–16.1(3). The final paragraph of § 53–06.1–16.1 modifies that subsection to elevate the seriousness of the crime. Any fraudulent activity involving pull tabs, twenty-one, or bingo is a class C felony. Thus, Erickson committed a willful act normally

---

2. Erickson argues the district court should have suppressed evidence of his stealing money from the locked box as being not relevant, and being more prejudicial than probative. The district court correctly ruled the conduct Erickson wishes suppressed is the conduct for which he is charged. His misconduct involves the game of twenty-one and is not evidence of a prior crime.

classified as a class A misdemeanor. Because the fraudulent act involved a game of twenty-one, it becomes a class C felony.[3]

The statute requires willful intent. Erickson admitted to the willful acts, and was properly charged.

### III

■ Based on the different classifications for offenses committed while playing pull tabs, twenty-one, and bingo, Erickson argues the statute violates equal protection. He contends there is no rational basis for imposing a higher penalty on those forms of gambling as compared with any other form of legalized gambling.

"Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration."

*State v. Hanson*, 256 N.W.2d 364, 368 (N.D. 1977). A rational relationship must exist between the classification and the purpose of the statute. *Hanson*. Acts of the legislature are presumed constitutional and the attacker must overcome a strong presumption of constitutionality. *Tweed*.

The statute distinguishes pull tabs, twenty-one, and bingo, from all other forms of legalized gambling because they are the most widely used in North Dakota and have been the source of significant problems. House Standing Committee Minutes, 1993, testimony before House Judiciary Committee, Conference Committee on H.B. 1416, April 23, 1993. *See* N.D.C.C. §§ 53–06.1–07 through 53–06.1–10.1 (describing the nine forms of legalized gambling allowed in North Dakota, and the limitations placed on each). The legislature recognized, when it enacted the statute, the "massive widespread cheating going on in the conduct of the game of [twenty-one] in North Dakota." Testimony of Senator Stenehjem, before the House Judiciary Committee, Conference Committee on H.B. 1416, April 23, 1993. The testimony surrounding the enactment of N.D.C.C. § 53–06.1–16.1, contemplates the very crime charged here. Senator Marks testified:

"These are enforcement issues that are very much needed in North Dakota, and we know there's cheating in gambling, with pull tabs, with blackjack. We even had a memo across the desk indicating a case where cheating was proven and arrests were made now in that case, which is now in court, for skimming—I don't know if it was skimming so much, but the money was not put in the till, it was put in his pocket. There's some sleight of hand with the blackjack and those cameras are so important to eliminate that sort of thing or cut it down. And I think the cheating in the pull tabs would also be cut down greatly, because this globe in the ceiling would not reveal which way the camera was pointing. These things are very, very important. We need them very badly in the State of North Dakota. I hope that you would promote it very heartily."

House Standing Committee Minutes, 1993, hearing before the House Judiciary Committee, Conference Committee on H.B. 1416, April 23, 1993.

The heightened penalties for pull tabs, bingo, and twenty-one are rationally related to the legislature's goal of reducing and preventing widespread problems in those three forms of gambling. The statute is not arbitrary, unreasonable, or unwarranted. *See Hanson*.

### IV

The judgment of the district court is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.

---

**3.** Erickson argues the statute violates due process because it is vague and indefinite. We conclude the statute has an understandable and distinct definition. *See State v. Tweed*, 491 N.W.2d 412, 419 (N.D.1992).