# STATE OF MICHIGAN

# COURT OF APPEALS

POSEN CONSTRUCTION, INC.,

      Plaintiff,

v

CITY OF DEARBORN,

      Defendant/Third-Party Plaintiff-
      Appellee,

and

NEYER, TISEO & HINDO, LTD., d/b/a NTH
CONSULTANTS, LTD.,

      Third-Party Defendant-Appellant.

UNPUBLISHED
January 27, 2015

No. 311214
Wayne Circuit Court
LC No. 09-003465-CK

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Third-party defendant, Neyer, Tiseo & Hindo, Ltd., d/b/a NTH Consultants, Ltd. ("NTH"), appeals the trial court's order partially granting summary disposition in favor of third-party plaintiff, City of Dearborn (the City), and denying NTH's cross-motion for summary disposition with respect to the City's breach of contract claim against NTH.[1] We affirm the trial court's summary disposition ruling, but modify in order to clarify the scope of NTH's duties to defend and indemnify the City.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case involves a dispute between the City and NTH regarding NTH's contractual duties to defend and indemnify the City as set forth in certain agreements between the parties. In

---

[1] This Court originally denied NTH's application for leave to appeal. In lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted. *Posen Const, Inc v City of Dearborn*, 495 Mich 983; 843 NW2d 924 (2014).

-1-

December 1998, the City sought to redesign its water and sewer systems in order to meet new water quality standards. To facilitate this substantial undertaking, the City issued a revised Request for Proposal (RFP) for consulting engineering firms to provide engineering services for the City's Combined Sewer Overflow Control Program (hereafter "CSO Project"), which involved limiting the amount of CSO into the Rouge River. Paragraph 23 of the RFP provided, in pertinent part:

> When the consultant is successfully selected by the reviewing panel and a mutually satisfactory contract is negotiated, the contract will be submitted to the Mayor and Dearborn City Council for approval. Until the Contract is properly executed by the proposer and the Mayor and a fully executed contract is received by the proposer, the City of Dearborn will have no obligation to proposer.

Paragraph 27 of the RFP required an agreement by the proposer that, "if selected, it will immediately enter into good faith negotiations with the City of Dearborn and faithfully attempt to reach agreement within twenty-one (21) calendar days of the date of the City of Dearborn's notice of determination."

The parties' dispute originates from a "save harmless" provision contained in the RFP. Paragraph 24 of the RFP provides that "[t]he Contractor shall save harmless, defend and indemnify the City against all claims or damages arising as result of its operation under this contract." This provision, along with an indemnity provision contained in a subsequently-negotiated engineering services agreement ("ESA") (discussed below), forms the basis of the parties' dispute in the instant matter.

It is undisputed that NTH was the successful bidder for the CSO project, and that the City and NTH entered into an ESA, dated April 30, 1999, pursuant to which NTH was to provide preliminary analysis and design services. The basic services NTH was to perform under this contract were set forth in Article 1.1 of the ESA, which described specific tasks for NTH to perform, but also expressly incorporated the RFP and other documents, including an exhibit to the ESA. Article 14 provides that the ESA "along with the Request for Proposal published by the OWNER on December 3, 1998, Bulletin No. 1, transmitted by fax on December 23, 1998 and ENGINEER'S response to the Request for Proposal dated January 13, 1999 constitutes the entire agreement as to the PROJECT between the parties."

Pertinent to this appeal, Article 8 of the ESA sets forth duties for NTH to defend and indemnify the City under specified conditions:

> The ENGINEER agrees to be responsible for any loss or damage to property or injury, damage or death to persons due to the negligent performance of the service under this Contract, and further agrees to protect and defend the OWNER against all claims or demands of every kind involving negligent performance by the ENGINEER and to hold the OWNER harmless from any loss or damage resulting from any negligent acts, errors, or omissions in the performance of the services under this Contract. Such responsibility shall not be construed as a liability for damage caused by or resulting from the negligence of the owner, its agents other than the ENGINEER, or its employees.

NTH and the City executed several addendums to the ESA before this action was filed, including an addendum executed in 2004 that required NTH to provide construction management services and quality control and engineering support for a portion of the CSO Project referred to as "Contract 6." The City awarded Posen Construction, Inc. ("Posen") a contract for Contract 6. Article 4 of the contract entitled the City to liquidated damages of $2,500 for each day in which Posen failed to timely complete work in accordance with the terms of the contract. It also allowed the City to retain any liquidated damages from amounts due to Posen under the contract. The general conditions for Posen's contract with the City provided in Article 9, ¶ 9.08(A), that "Engineer will be the initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the Work thereunder." Article 10, which addressed work changes and claims, required the engineer to review claims. Under ¶ 10.05(E), the engineer's decision was final and binding, unless the owner or contractor invoked dispute resolution procedures. But in 2006, Posen and the City amended this general provision to allow the City to conduct a review if Posen wished to pursue a claim that was denied. The amendment also authorized Posen to file a lawsuit to prosecute a claim in an appropriate court if the claim was not resolved.

In February 2009, Posen filed this action against the City for breach of contract, seeking damages for delays and extra work, including corrective work allegedly caused by defective designs, plans, and specifications related to Contract 6. Alternatively, Posen sought compensation for extra work based on a quantum meruit theory of relief. In April 2009, the City filed a third-party complaint against NTH, seeking damages for breach of contract and professional negligence. The City alleged, in pertinent part, that NTH violated Article 8 of the ESA by refusing to defend it against Posen's allegations that arose out of NTH's negligent performance. The City also sought indemnification for any damages established by Posen that resulted from NTH's negligence.

In July 2010, the trial court ordered the parties to participate in facilitative mediation and exchange expert reports for purposes of that mediation. Posen obtained an evaluation of its claims for purposes of mediation from FTI Consulting, Inc, which concluded that Posen was entitled to compensation in the amount of $8,006,455 for costs incurred because of changes, delays, and disruptions due to differing site conditions, contract changes, and/or deficiencies in specifications.

In November 2010, the City informed NTH that it would present a potential settlement to the city council for approval on November 9, 2010. The letter specified that NTH had until November 9, 2010 to comply with its contractual obligations. In an e-mail response dated November 8, 2010, NTH's counsel claimed that NTH had no duty to the City based on the allegations in Posen's complaint.

Following mediation, Posen settled with the City and the trial court entered a stipulated order dismissing Posen's complaint in December 2010. The terms of the settlement were set forth in a change order for Contract 6. The change order adjusted the final completion date for Contract 6 to February 28, 2011, but entitled the City to keep $912,500 out of previously assessed liquidated damages of $2,315,000. The City was to forfeit the remaining $1,402,500 of the previously assessed liquidated damages. The change order also detailed various monetary transfers or payments that would be made as part of the settlement. It provided for Posen to release all pending and known claims as of October 28, 2010, except for five unresolved claims.

Posen was entitled to payment of $1,912,500 on or before November 19, 2010, for all resolved claims as of October 28, 2010.

Following the dismissal of Posen, the City and NTH filed cross-motions for summary disposition with respect to the third-party claims. The City asserted that NTH was responsible for the amount of its settlement with Posen Inc, which it alleged was $3,315,000. It also sought $220,927.63 for the fees and costs incurred through the date of the facilitative mediation regarding Posen's claims. The City relied on both ¶ 24 of the RFP and Article 8 of the ESA as the basis for NTH's contractual duties, but also argued that it could proceed solely under ¶ 24 of the RFP. The City expounded on this position in response to NTH's motion for summary disposition by arguing that ¶ 24 of the RFP is controlling to the extent that there was any ambiguity or conflict with Article 8 of the ESA, as ¶ 24 of the RFP is the first provision that addresses NTH's duties to defend and indemnify. The trial court agreed and gave effect only to ¶ 24 of the RFP. In reaching this decision, the trial court applied the general rule of construction in *Klever v Klever*, 333 Mich 179; 52 NW2d 653 (1952), and *Helms v LeMieux*, 286 Mich App 381; 780 NW2d 878 (2009), rev'd 486 NW2d 937 (2010), that, in the event of an ambiguity created by two conflicting clauses, the first of two conflicting clauses in a contract will be applied. The trial court also determined that NTH breached its duty to defend the City from all claims involving NTH's performance under its contract with the City. Recognizing that some of the claims Posen raised against the City did not involve NTH's performance, the trial court specified that "[t]he City's damages for breach of [the] duty to defend are limited to attorney fees incurred in defending NTH's performance under the contract." Concerning indemnity, the trial court determined that NTH was required to indemnify the City, but that the City must prove its damages resulting from NTH's performance. The trial court made no determination regarding the amount of the City's damages, but rejected NTH's argument that there were no damages because the settlement between Posen and the City merely constituted a return of funds to which the City had no claim of entitlement.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366; 817 NW2d 504 (2012). We also review de novo the proper interpretation of a contract and the legal effect of its provisions. *Id.* at 366-367.

A motion under MCR 2.116(C)(10) tests the factual support for a complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). MCR 2.116(C)(10) provides that summary disposition is appropriate where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In reviewing a motion under subrule (C)(10), a court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, to the extent that the evidence would be substantively admissible, and views that evidence in a light most favorable to the nonmoving party. MCR 2.116(G)(6); *Maiden*, 461 Mich at 120-121. A genuine issue of material fact exists where, viewing the evidence in this manner, the record that might be developed would leave open an issue upon which reasonable minds might differ. *Bonner v City of Brighton*, 495 Mich 209, 220; 848 NW2d 380 (2014).

-4-

### III. NTH'S CONTRACTUAL DUTIES

NTH argues that the trial court erred in determining the scope of its contractual duties to defend and indemnify the City. NTH argues that effect should be given to Article 8 of the ESA because it does not conflict with ¶ 24 of the RFP, but rather was negotiated to explain what type of claims fall within ¶ 24. Alternatively, NTH argues that the trial court should have resolved any ambiguity regarding the scope of its contractual duties by concluding from extrinsic evidence that the parties intended that Article 8 of the ESA govern NTH's obligations. Because we find no ambiguity, we find it unnecessary to address NTH's latter argument. But we conclude that the trial court erred in failing to give effect to Article 8 of the ESA.

"An indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). In the context of insurance law, a duty to defend is a distinct duty, which can be broader than a duty to indemnify. *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450-451; 550 NW2d 475 (1996). In other commercial transactions, however, the extent of the duty to defend is determined by the language of the parties' contract. *Grand Trunk W R, Inc v Auto Warehousing Co*, 262 Mich App 345, 353; 686 NW2d 756 (2004).

In this case, the RFP that resulted in NTH's selection as the consultant for the CSO Project is not itself a contract. This is apparent from ¶ 23 of the RFP, which provides that the City has no obligation pending the negotiation of and proper approval of a contract. The City's selection of NTH cannot even be viewed as creating a contract to enter into a future contract, because the RFP provides for specific contract terms to be negotiated. An enforceable contract to enter into a future contract must specify all material and essential terms, and leave nothing to be agreed upon as a result of future negotiations. *Heritage Broadcasting Co v Wilson Communications, Inc*, 170 Mich App 812, 819; 428 NW2d 784 (1988). But because the terms of the RFP were incorporated into the ESA, the two writings must be read together. *Forge v Smith*, 458 Mich 198, 207; 580 NW2d 876 (1998). The cardinal rule in interpreting a contract is to determine the intent of the parties. *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010). All other rules of construction are subordinate. *Id.* Where possible, a court gives effect to every word, phrase, and clause in a contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). An interpretation that renders any part of contract surplusage or nugatory is to be avoided. *Id.* See also *Miller-Davis Co*, 495 Mich at 174.

Where contractual language is not ambiguous, it is construed according to its plain meaning. *Shay*, 487 Mich at 660. A dictionary definition may be used to determine the plain and ordinary meaning of undefined terms. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007). If contractual language is ambiguous, extrinsic evidence is permitted to determine the parties' intent. *Shay*, 487 Mich at 667. Contractual language is ambiguous where a term is equally susceptible to more than a single meaning or where two provisions irreconcilably conflict. *Coates*, 276 Mich App at 503.

We begin our analysis of the scope of NTH's contractual duties by examining Article 8 of the ESA, which provides, in pertinent part:

The ENGINEER agrees to be responsible for any loss or damage to property or injury, damage or death to persons due to the negligent performance of the service under this Contract, and further agrees to protect and defend the OWNER against all claims or demands of every kind involving negligent performance by the ENGINEER and to hold the OWNER harmless from any loss or damage resulting from any negligent acts, errors, or omissions in the performance of the services under this Contract. Such responsibility shall not be construed as a liability for damage caused by or resulting from the negligence of the owner, its agents other than the ENGINEER, or its employees.

Turning to the duty to defend established in Article 8 of the ESA, we note that the duty begins in a broad sense, as it applies to "all claims or demands of every kind," see *Miller-Davis Co*, 495 Mich at 175 ("all" and "any" provide the broadest possible obligations), and that the duty is thereafter narrowed by the requirement that the claim or demand "involve[ ] negligent performance" by NTH. Contrary to the City's argument, it is not enough that a party merely makes a claim against the City that involves NTH's actions; rather, the claim must involve NTH's *negligent* performance. Further, it is not necessary that a third party allege that the City is *liable* for NTH's negligent acts.

A party performing under a contract may be liable in negligence to a noncontracting party where the party owes a legal duty to the noncontracting party independent of the contract. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 172; 809 NW2d 553 (2011). However, the duty-to-defend provision of Article 8 of the ESA does not require that a noncontracting party have a cause of action for negligence. The word "involve" is defined, in relevant part, "to include as a necessary circumstance, condition, or consequence; imply; entail." *Random House College Webster's Dictionary* (1997). The term "involving" may have expansive connotations such as to encompass related or connected conduct. See *United States v Winbush*, 407 F3d 703, 707-708 (CA 5, 2005). It only requires that an activity be a necessary condition or circumstance. *State v Erickson*, 534 NW2d 804, 807 (ND, 1995). The necessary condition in this case is only that the claim or demand involve NTH's negligent performance. The term "negligent" in reference to performance is understood as being "[c]haracterized by a person's failure to exercise the degree of care that someone of ordinary prudence would have exercised in the same circumstances." *Black's Law Dictionary* (10th ed). It follows that NTH's duty to defend under Article 8 of the ESA arises where a noncontracting party makes a claim or demand on the City that involves conduct by NTH that is characterized by this lack of due care.

Concerning the duty to indemnify under Article 8 of the ESA, we again note that the duty begins in the broad sense, as it applies to "any loss or damage" and that this broad duty is focused by the requirement that the loss or damage "result[ ] from any negligent acts, errors, or omissions in the performance of the services" by NTH under the ESA. NTH's duty to indemnify is further limited by the ESA, as the ESA does not purport to indemnify the City "for damage caused by or resulting from the negligence of the [City], its agents other than [NTH], or its employees."

We do not find the plain language of NTH's duties to defend or indemnify under the ESA to be ambiguous. Because Article 8 of the ESA is not ambiguous in its delineation of the scope of NTH's duties to defend and indemnity the City, we now turn to the question whether these

-6-

duties irreconcilably conflict with ¶ 24 of the RFP. See *Coates*, 276 Mich App at 503. We agree with NTH that the trial court erred by applying a general rule of contract construction set forth in *Klever*, 333 Mich 179, and *Helms*, 286 Mich App 381, concerning provisions that irreconcilably conflict, without first examining the contract as a whole to determine whether there was irreconcilable conflict. As discussed below, when considering the documents as a whole, we conclude that there is no irreconcilable conflict between Article 8 of the ESA and ¶ 24 of the RFP.

Paragraph 24 of the RFP was written in a manner that assumed that the successful proposer would be able to negotiate and obtain approval of a contract with the City. The RFP provides that "[t]he Contractor shall save harmless, defend and indemnify the City against all claims or damages arising as a result of its operation under this contract." Paragraph 24 of the RFP is consistent with Article 8 of the ESA in the sense that ¶ 24 uses the broad term "all" to describe the claims or damages entitled to a defense and indemnification, and Article 8 uses the broad terms "all" and "any." See *Miller-Davis Co*, 495 Mich at 175 ("all" and "any" provide the broadest possible obligations). But the claims and defenses are modified in ¶ 24 by the phrase "arising as a result of its operation under this contract." The "arising as a result of" language suggests a causal relationship between a noncontracting party's claim or damages and the contractor's "operation under this contract." Cf. *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006) (phrase "arising out of" suggests a causal connection between two events that is more than incidental). The term "operation" has been defined as "an act or instance, process, or manner of functioning or operating." *Chandler v Muskegon Co*, 467 Mich 315, 320; 652 NW2d 224 (2002), quoting *Random House Webster's College Dictionary* (1997).

But considering that specific contract terms were subject to negotiations under ¶ 23 of the RFP, one could only determine what constitutes "operation under this contract" by considering the specifically negotiated terms of the ESA. Article 8 of the ESA specifically addresses NTH's operation under the contract in the context of NTH's duties to defend and indemnify. Unlike the incorporated provision from ¶ 24 of the RFP, Article 8 addresses each duty separately in terms of NTH's performance of services under the contract. Article 8 may be construed in harmony with the incorporated provision from ¶ 24 of the RFP by recognizing that ¶ 23 of the RFP gave the parties an opportunity to negotiate specific terms, and Article 8 contains more specificity regarding what it means for a claim or demand to arise as a result of NTH's operation under the contract.

Considering the ESA as a whole, we conclude that the trial court erred in finding a conflict between ¶ 24 of the RFP and Article 8 of the ESA. Contrary to the trial court's determination, giving effect to Article 8 does not nullify ¶ 24 of the RFP. Article 8 unambiguously controls NTH's duties to defend and indemnify the City because it explains the more general duties in ¶ 24 of the RFP that were incorporated into the ESA as part of the negotiations required by ¶ 23 of the RFP.[2]

---

[2] Although the parties dispute whether the general rule that a specific contract provision controls over a related general provision should apply, see *DeFrain*, 491 Mich at 367 n 22, it is

-7-

In light of our conclusion that Article 8 explains the scope of NTH's duty to defend and indemnify, we conclude that the trial court operated under the wrong contractual framework when it rendered its decision. Nevertheless, as discussed below, although we modify the trial court's ruling with respect to the scope of NTH's duties to defend and indemnify, we conclude that the trial court's summary disposition ruling was correct. "This Court will not reverse an order of the trial court if the court reached the right result for the wrong reason." *Grand Trunk W R, Inc*, 262 Mich App at 354.

## IV. DUTY TO DEFEND

As indicated earlier, in commercial transactions the extent of the duty to defend in Michigan is determined by the relevant contractual language. *Id.* at 353. Article 8 of the ESA explains that NTH is required to defend the City "against all claims or demands involving negligent performance" by NTH. Looking to Posen's complaint against the City, it is clear that Posen alleged contract-based actions against the City, but that some of those claims were directed at "the plans and specifications prepared by NTH . . . ." The complaint also alleged that Posen's performance under its contract with the City "took extraordinary time and effort as results [sic] of defective specifications, drawings, and design documents" that were provided by NTH. In other words, the complaint expressly mentioned NTH's performance under its contract with the City.

NTH argues that it had no duty to defend the City with respect to Posen's claims because Posen's complaint failed to state a claim for negligence. We disagree and find the trial court's reasoning on this matter to be persuasive. The trial court determined that the "unambiguous meaning of 'defective and erroneous plans, specifications,' etc. . . . refers clearly to work NTH performed." NTH points out that a negligence claim rests upon a breach of the standard of care, even for a design professional. See *Bayne v Everham*, 197 Mich 181, 199-200; 163 NW 1002 (1917). However, as discussed, NTH's duty to defend under Article 8 of the ESA only required that the claim or demand involve negligent performance. Further, the gravamen of a claim is determined by considering it as a whole, and not the procedural labels attached to it by a party. See *Maiden*, 461 Mich at 135; *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Although not all of Posen's allegations related to NTH's performance—for instance, Posen raised an alternative claim for quantum meruit—when considered as a whole, the allegations in Posen's complaint were sufficient to demonstrate that it was based, in part, on claims involving negligent performance by NTH. Thus, the allegations were sufficient to invoke NTH's duty to defend the City with respect to the claim involving negligent performance, provided that the City tendered the defense to NTH. Here, there is no dispute that the City tendered its defense to NTH.

We clarify though, that NTH's duty to defend is limited to claims by Posen alleging *negligent* performance by NTH. In addressing this issue, the trial court reserved a finding on the amount of fees owed as part of the duty to defend, but ruled that the duty to defend was limited to attorney fees "incurred in defending NTH's *performance*." (Emphasis added). In deciding the

---

unnecessary to address this issue. The general rule is not determinative of our interpretation of the ESA.

amount of fees owed as part of the duty to defend, we clarify that the trial court is only to consider those fees incurred by the City in defending Posen's claims that alleged *negligent* performance by NTH.

NTH argues that the City waived any obligation that NTH had to defend the City by continuing to pay NTH for the work it performed. A waiver is an intentional relinquishment of a known right. *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006). Whether a waiver exists is primarily a question of fact. *Strom-Johnson Constr Co v Riverview Furniture Co*, 227 Mich 55, 67-68; 198 NW 714 (1924). Although the trial court did not specifically address this wavier issue, it considered the evidence presented by NTH, which indicated that NTH made a settlement offer to the City in April 2009. Considering NTH's failure to establish any error in the trial court's determination that this evidence was inadmissible under MRE 408, or any factual support for a valid waiver, we conclude that NTH's claim of waiver affords no basis for disturbing the trial court's summary disposition ruling.

We also reject NTH's claim that relief is warranted based on a theory of substantial performance. NTH has not established any factual support for its claim that it actually provided a defense for the City, let alone that there was substantial performance. "This Court will not search the record for factual support for a party's claim." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009). In any event, viewed in a light most favorable to the City, the evidence supports the City's claim that NTH had its own interests to protect in this case as a result of the City's third-party complaint. Consistent therewith, the evidence indicates that NTH, like Posen and the City, prepared expert reports for purposes of the facilitative mediation.

In addition, a party's substantial compliance with contractual obligations does not preclude another party to the contract from recovering damages caused by reason of the failure to completely perform. *Antonoff v Basso*, 347 Mich 18, 32, 78 NW2d 604 (1956); *Gibson v Group Ins Co*, 142 Mich App 271, 275-276; 369 NW2d 484 (1985). In this case, the trial court limited the City's damages to attorney fees incurred in defending NTH's performance under the contract with the City. In light our determination that Article 8 of the ESA applies, we modify the trial court's decision to limit the damages to attorney fees incurred in defending Posen's claims that involve negligent performance. We conclude, however, that NTH failed to establish that there is no genuine issue of material fact regarding whether the City sustained any damages.

In support of its arguments relating to wavier and the rule of substantial performance, NTH also points out that it entered into joint defense agreements with the City with respect to other claims involving the CSO Project, including additional claims made by Posen. This Court previously granted NTH's motions to supplement the record to include the joint defense agreements and other related documents. *Posen Const, Inc v City of Dearborn*, unpublished orders of the Court of Appeals, entered October 22, 2014, and October 27, 2014 (Docket No. 311214). However, we are not persuaded that NTH has established anything with respect to the other cases that would entitle it to summary disposition under MCR 2.116(C)(10). Therefore, we find no basis for relief with respect to the City's claim that NTH breached its duty to provide a defense.

## V. DUTY TO INDEMNIFY

NTH also raises several issues regarding the application of Article 8 of the ESA to the City's specific claim that NTH breached the duty to indemnify in connection with its settlement with Posen. As with the duty to defend, we conclude that the trial court was operating under the wrong contractual framework when considering this claim. Nevertheless, considered in the proper framework, NTH has not established that the trial court reached the wrong result in failing to dismiss the City's claim in its entirety under MCR 2.116(C)(10).

A party asserting breach of an indemnity contract must establish "(1) there was a contract, (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co*, 495 Mich at 178. A breach of contract must be a proximate cause of the harm suffered by the plaintiff. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 254; 792 NW2d 781 (2010). The plaintiff's damages must also satisfy the "but for" test of causation. *Miller-Davis Co*, 495 Mich at 179. But it is not necessary that damages be determined with mathematical certainty. *Chelsea Investment Group LLC*, 288 Mich App at 254.

Where a contractual indemnitee settles a claim before seeking the indemnitor's approval or before tendering a defense to the indemnitor, the indemnitee must prove its actual liability to the claimant in order to recover from the indemnitor. *Grand Truck W R*, 262 Mich App at 354-355. However, if the indemnitor had notice of the claim and refused to defend, the indemnitee need only show that the original claim was covered by the indemnity contract and that settlement was reasonable. *Id.* at 355. An indemnitee acts reasonably in settling the original claim where there is potential liability. *Id.* The trier of fact must consider the settlement amount in light of the risk of exposure to the indemnitee in evaluating this issue. *Id.* at 355-356.

NTH argues that the trial court erred in finding the potential liability rule applicable to the City's claim for indemnification if Article 8 of the ESA is deemed to govern the scope of its duty. It argues that its duty to indemnify was not triggered under the express language of Article 8 of the ESA.

"Where parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the language of the contract." *Id.* at 353. "The threshold question whether the fact situation is covered by the indemnity contract generally requires only a straightforward analysis of the facts and the contract terms." *Id.* at 356-357.

Under the terms of the indemnity provision found in Article 8 of the ESA, it is clear that the fact situation in Posen's claim was covered, at least in part, under the indemnity agreement. The indemnity agreement provided that NTH would indemnify the City "from any loss or damage resulting from any negligent acts, errors, or omissions in the performance" of NTH's services under its contract with the City.[3] As noted above, Posen raised several claims against

---

[3] The parties dispute the meaning of the phrase "negligent acts, errors, or omissions," disagreeing over whether the word "negligent" modifies "acts" only, or whether it refers to "errors or

the City, some of which alleged that NTH performed its services to the City in a negligent manner. Accordingly, Posen alleged a factual scenario that was covered, at least in part, under the terms of NTH's indemnity agreement with the City. Although the trial court considered the incorrect indemnification provision, it nevertheless reached the correct result in finding that Posen's claims triggered NTH's duty to indemnify the City and that the potential liability rule of *Grand Trunk W R* applied.

NTH argues that the trial court's conclusion was flawed because the plain language of the indemnity agreement in Article 8 of the ESA required the City to present proof of NTH's negligence. NTH's argument misses the mark. Had the City not tendered its defense to NTH, this would be the case. See *Grand Trunk W R*, 262 Mich App at 354-355 (requiring the indemnitee to prove actual liability in cases where the indemnitee settles a claim against it before seeking approval of, or tendering the defense to, the indemnitor). However, because NTH rejected the tender of defense, the City need only show *potential* liability, which, as noted, the City did. See *id.* at 355 ("However, the indemnitee who has settled a claim need show only *potential* liability if the indemnitor had notice of the claim and refused to defend."). Accordingly, application of the potential liability rule to this case does not, as NTH contends, violate the express terms of the parties' indemnity agreement.[4]

Furthermore, contrary to NTH's arguments, the trial court's ruling did not require NTH to be responsible for amounts in the settlement that were outside the scope of the indemnity agreement. Rather, the trial court acknowledged that, while some of Posen's claims against the City involved allegations of NTH's negligent performance of its contractual obligations, not all of Posen's claims involved such allegations. As the trial court recognized, even the City admitted that some of the money it paid to Posen under the settlement agreement was not covered by the indemnity agreement. Cognizant of this fact, the trial court required the City to "show that it was not liable for the claims Posen made solely against the City, and that it was *potentially* liable for the claims Posen made regarding NTH's work under the Dearborn-NTH contract."

We also conclude that consideration of the reasonableness of the settlement in this case is premature because the amount of the settlement attributable to NTH's negligent performance has not yet been determined. Therefore, we reject NTH's argument that the trial court erred by failing to address this issue in its summary disposition ruling.

NTH argues that the City cannot prove any contractual right to indemnification without an expert witness to establish negligence. NTH points out that a claim of professional negligence usually requires expert testimony to establish the standard of care, breach of duty, and

omissions" as well. Because we find that the allegations raised by Posen against the City involved NTH's negligent performance of its contractual duties, we need not resolve this question, as it would be of no consequence to our analysis.

[4] In addition, we reject NTH's argument that the potential liability rule only applies where the duty to defend is coincident with the duty to indemnify. In fact, this Court has applied the potential liability rule even in the absence of an express contractual duty to defend. See *Ford v Clark Equip Co*, 87 Mich App 270, 273, 278-279; 274 NW2d 33 (1978).

causation. See *Dean v Tucker*, 205 Mich App 547, 550; 517 NW2d 835 (1994). In light our determination that the potential liability may be applied to the portion of Posen's claims involving NTH's negligence, we conclude that NTH has failed to establish any need for expert testimony. The City's burden is to establish a reasonable settlement. *Grand Trunk W R*, 262 Mich App 355. NTH is free to argue that Posen's allegations involving its negligence performance could have been successfully defended. But the burden of presenting evidence to show that a suit would have been successfully defended is on the indemnitor. *Id.* at 357; citing *Ford*, 87 Mich App at 278.

NTH also argues that the City cannot establish damages because the settlement largely constituted a return of the City's liquidated damages to Posen. We do not agree. Article 4, ¶ 4.03(A), of the contract between Posen and the City entitled the City to liquidated damages of $2,500 for each calendar day by which Posen failed to complete work in accordance with the terms of the contract. It also allowed the City to retain such liquidated damages from amounts due to Posen. The subsequent settlement reached by Posen and the City, as set forth in the change order for Contract 6, provided, in pertinent part:

> 1. The City shall transfer $1,402,500 of the $2,315,000 in Liquidated Damages that the City has assessed against Posen to the Contractor's retainage account ("Retainage Account"), thereby increasing the Retaining Account to $3,917,350.00.

> 2. The City shall be entitled to keep $912,500.00 of the previously assessed Liquidated Damages, and Posen surrenders any and all claims to such liquidated damages.

> * * *

> 4. On or before November 19, 2010, Posen shall be paid $1,912,500 for all of Posen's pending and known Claims as of October 28, 2010, with the exception of the following open, unresolved Claims: . . . .

> 5. The Contract Time is adjusted as follows:

> Substantial Completion Date:        January 31, 2011

> Final Completion Date:        February 28, 2011

> Regardless of the adjustments of Contract Time in this paragraph, Posen acknowledges and agrees to the payment of liquidated damages in the amount of $912,500.00 as set forth in Paragraph 2 herein. [Footnote omitted.]

A contract provision for liquidated damages is an agreement by parties to fix the amount of damages in the event of a breach of the contract. *Barclae v Zarb*, 300 Mich App 455, 485; 834 NW2d 100 (2013). In this case, the contract between Posen and the City allowed for the City to deduct certain liquidated damages from the contract price and to retain the funds. When the City retained funds, those funds became the property of the City; they were no longer an amount owed to Posen under the contract. Consequently, when the City, in settling with Posen,

-12-

agreed to give up its right to funds that were rightfully in its possession, the City was damaged. Indeed, in choosing to satisfy part of the cost of the settlement with those funds, the City transferred its own money to Posen, it did not, as NTH suggests, merely return funds to Posen in which it had no interest. Accordingly, the funds were not funds that already belonged to Posen and we see no basis for disturbing the trial court's ruling in this regard.

## VI. IMMUNITY AND DECISION-MAKING

NTH also argues that it was entitled to summary disposition with respect to any claim by Posen predicated on decisions that it made when acting as an arbitrator of disputes between the City and Posen. NTH argues that it was a third-party beneficiary under ¶ 9.08 of the general conditions of that contract, which provides that it "will not be liable in connection with any interpretation or decision rendered in good faith" when functioning as an interpreter of contract documents and as a judge of the acceptability of the work thereunder. NTH similarly argues that it should not be liable for any claim made by Posen, and should not have had a duty to defend where the City made a final determination regarding the claim under the 2006 amendment to ¶ 10.05 of the general conditions of the City's contract with Posen.

NTH has not established that the good-faith protection afforded to it under the City's contract with Posen, or the City's decision-making authority under the 2006 amendment to that contract, have any bearing on its duties to defend and indemnify the City under the ESA. The 2006 amendment clearly authorizes Posen to file a lawsuit in an appropriate court to prosecute unresolved disputes. Because Posen sought additional compensation based on the underlying disputes, such as its claim that differing site conditions caused an unforeseeable increase in costs, not because of the City's or NTH's decisions regarding disputes, we reject this claim of error.

## VII. PROFESSIONAL NEGLIGENCE

NTH also argues that it was entitled to summary disposition with respect to the City's claim of professional negligence. We decline to consider NTH's argument because it failed to obtain an answer from the trial court with respect to this claim. "A court speaks through its orders, and the jurisdiction of this court is confined to judgments and orders." *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 54; 436 NW2d 70 (1989). In any event, considering the City's position, as asserted in its motion for summary disposition, that the only remaining issues in this case consisted of its claims that NTH is responsible for its defense costs and the settlement with Posen, there is no reason to address this claim.

Affirmed, but modified as specified herein.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra

-13-