# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH CAPOZZOLI and PAMELA
CAPOZZOLI,

Plaintiffs-Appellants,

v

STOUT RISIUS ROSS INC,

Defendant-Appellee.

UNPUBLISHED
March 29, 2016

No. 326413
Oakland Circuit Court
LC No. 2014-144360-CZ

Before: K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Plaintiffs Joseph and Pamela Capozzoli appeal by right a February 20, 2015, trial court order granting defendant Stout Risius Ross, Inc's, (SRR's) motion for summary disposition pursuant to MCR 2.116(C)(8). For the reasons set forth in this opinion, we affirm.

## A. FACTS

Plaintiffs have a business interest in Capozzoli Advisors for Partners, Inc, (Cap Advisors), which provided real estate and asset management services to public pension plans. In or about 1990, the General Retirement System of the City of Detroit (GRSCD) retained Cap Advisors to manage approximately $30,000,000 in assets. Eventually, the GRSCD awarded further allocations to Cap Advisors. Subsequently, Cap Advisors formed multiple subsidiaries and Caproc LLC was formed as a parent company to all of the subsidiaries including Cap Advisors. Plaintiff Joseph Capozzoli was a partner of Caproc.

At some point, upon the recommendation of Cap Advisors, the GRSCD invested assets in a fund called Community Workforce Trust, L.P., (CWT); Cap Advisors managed the CWT investment. It appears that in the mid-2000's, Cap Advisors' investments including CWT lost substantial value and the SEC commenced an investigation into some of the GRSCD's investments. Cap Advisors and the GRSCD's relationship also appears to have soured; in August 2011, the GRSCD alleged that Cap Advisors owed it $88,000 for overcharges, and the GRSCD requested "all records and letters for the CWT," and demanded that Cap Advisors "appear before the Board to respond to losses." In February 2012, the GRSCD requested that Cap Advisors "open their books and records of the CWT."

-1-

In August 2012, the GRSCD terminated its relationship with Cap Advisors. Thereafter, the GRSCD hired defendant SRR to perform a forensic audit of the CWT investment. Because SRR had prior dealings with Caproc, before commencing the audit, SRR sent a letter to the GRSCD and Joseph Capozzoli requesting that they sign a "formal waiver of any potential conflicts." The waiver letter provided in relevant part as follows:

> The purpose of this letter is to acknowledge a formal waiver of any potential conflicts, by all parties, related to the retention of SRR's Dispute Advisory and Forensic Services Group by the [GRSCD] to perform a forensic audit of its investment in [CWT]. This assignment involves an independent review by SRR and requires the cooperation of the principals of CWT as the keepers of the corporate books and records.

> As a measure of full disclosure, a summary of the prior engagements whereby SRR's Valuation & Financial Opinions Group provided professional services to companies owned, managed, and/or operated by Mr. Capozzoli are presented as follows:

> [A list of services that SRR previously provided to Caproc]

> It should be noted that in all of the engagements listed above, SRR provided independent valuation and financial analysis. In the Instant Manner, SRR is also engaged to provide an Independent analysis. In addition, the prior engagements performed by SRR were undertaken by a separate internal work group and no professionals involved in the prior matters will be involved in or consulted on the Matter.

> Prior to SRR beginning work in the Matter, we request that Mr. Joseph Capozzoli, and any entities owned, operated, and/or managed by him, and GRSCD confirm their waiver of any conflict of interest by SRR by signing this letter . . . .

During SRR's forensic audit, the firm clashed with plaintiffs about disclosure of information. Ultimately, on October 10, 2012, SRR submitted its "Presentation of Findings" to the GRSCD, noting that the investigation was hampered by plaintiffs' failure to disclose documents.

In response, the GRSCD passed a resolution demanding that Cap Advisors fully cooperate with SRR and produce all requested financial information and documentation. The GRSCD sent the resolution to plaintiffs' former counsel on October 24, 2012.

About one year after SRR completed its forensic audit, the GRSCD commenced a separate suit in the circuit court against, among others, CAP Advisors and plaintiffs individually ("the GRSCD litigation"). The GRSCD alleged, *inter alia*, breach of contract, several statutory violations including the Public Employee Retirement System Investment Act (PERSIA), the Michigan Uniform Securities Act, in addition to negligence, breach of fiduciary duty, fraud, gross negligence, and conversion. These claims were related to CAP Advisors' management of the GRSCD's investments.

In response, plaintiffs commenced this suit against SRR on December 3, 2014. The complaint contains 102 paragraphs of mostly facts related to various interactions between SRR, Cap Advisors, Caproc and related parties. Interspersed between these factual paragraphs, plaintiffs' included headers reading: "Count I," "Count II," and "Count III." Counts I and II do not set forth any viable claim and do not reference any law. Essentially, it appears that plaintiffs alleged that SRR engaged in misrepresentation and breached the waiver letter during the forensic audit.

Finally, Count III contained references to negligent/innocent misrepresentation, "breach of contract/waiver," and "intentional acts of misrepresentation and wrongdoing," related to what appears to be SRR's findings during the audit. Plaintiff alleged as follows:

a) Negligent and/or innocent misrepresentation including:

i) that CAP Advisors maintained more than one set of records for CWT, Bacaro, and Trumbull.

ii) mis-stating on Page 59, bullet point under per email from Pam Capozzoli.

iii) contending a draw on Trmbull loan without an appraisal, Page 63, bullet point 4;

iv) engagement letter from SRR included areas outside of waiver;

v) mis-stating results of audit by showing disbursements and not the amounts received;

vi) performing procedures out of scope of CWT documents;

vii) included disbursements but did not recognize the interest received prior to moving into CWT

viii) contended that there was a property management fee but were services and property expenditures allowed under Section 3.5 and 7.5 of the Limited Partner Agreement;

ix) implying improper conduct, which was actually allowed under Section 7.1 Limited Partner Agreement;

x) taxes and assessments were discussed in the meeting in September, copies and explanation of the increase in 2009 were provided to SRR, contrary to assertions;

xi) mis-stating that the CDD issued 2.7 bonds primarily relating to the Lauris Development, which is DeCAP II and was not accurate.

xii) misstates that said information was wrongfully withheld, and that there were termination fees;

xiii) did not use the Limited Partnership Agreement or Trinity Private Placement as sources that allowed for reimbursement of expenses or origination fees;

xiv) cast Plaintiffs in an unfavorable, incompetent and untrustworthy light.

b) Breach of Contract/Waiver including

i) As stated in subparagraph (a);

ii) Utilizing information provided by DGRS which was not part of the books and records of CWT;

c) Intentional Acts of Misrepresentation and Wrongdoing including;

i) As stated within subparagraphs (a) and (b).

In its initial response, SRR moved for summary disposition pursuant to MCR 2.116(C)(8). With respect to Counts I and II, SRR argued that plaintiffs failed to tie any of the factual assertions in those counts to a viable cause of action. With respect to Count III, SRR argued, in part, that it did not have a duty to plaintiffs where SRR and plaintiffs were not in a fiduciary relationship and where SRR was performing obligations that it had to the GRSCD. To the extent that plaintiffs alleged intentional misrepresentation/fraud, SRR argued, that claim was not plead with particularity and therefore failed under MCR 2.112(B)(1). Finally, SRR argued that plaintiffs breach of contract claim failed because SRR and plaintiffs were not involved in a contract and the waiver letter did not constitute a contract.

Regarding Count III, plaintiffs argued that "the basis of this lawsuit lies in SRR's portrayal of Plaintiffs' cooperation or lack thereof in the audit." As such, plaintiffs argued, they alleged sufficient facts to support a negligent/innocent misrepresentation claim and the waiver letter formed the basis for a contract claim. Regarding, intentional misrepresentation, plaintiffs argued that the complaint set out facts showing fraudulent and intentional misrepresentations that SRR made to the GRSCD.

Following a hearing, on February 20, 2015, the trial court issued an opinion and order granting SRR's motion for summary disposition under MCR 2.116(C)(8). The court reasoned that the complaint contained the following three claims: (1) negligent and/or innocent misrepresentation; (2) fraudulent/intentional misrepresentation; and (3) breach of contract. With respect to the misrepresentation claims, the court found that plaintiffs failed to allege facts to support a misrepresentation claim, explaining, "the facts alleged in the complaint clearly support that GRSCD—not plaintiffs—relied on the representations presented in the final report to file the 2013 Lawsuit."

With respect to the breach of contract claim, the court found that the facts in the pleadings showed that plaintiffs were not a party to or a third-party beneficiary of the contract between the GRSCD and SRR. Similarly, the waiver letter was not a contract where

(1) Mrs. Capozzoli did not sign the waiver agreement; (2) Mr. Capozzoli signed it in his capacity as CAP Advisor's President not in his individual

capacity; and (3) the waiver merely sets forth (a) the scope of defendant's work related to its engagement with GRSCD (e.g., forensic audit of the GRSCD's investment in CWT); (b) acknowledges that defendant previously conducted valuations for entities owned by Mr. Capozzoli; and (c) identifies those prior evaluations. Contrary to plaintiffs' assertion, [the waiver] only identifies that it 'requires the cooperation of the principal of CWT as the keepers of the corporate books and records.' As such, this Court cannot find that (1) plaintiffs were a party (or a privy) to the waiver or (2) defendant breached the waiver agreement when it requested information from CAP Advisors related to how it calculated its fee on the CWT investment or any other alleged wrongdoings.

Finally, the court denied plaintiffs' request to amend their pleading, reasoning that an amendment would be futile where "plaintiffs were not a party to either the contract or the waiver and GRSCD—not plaintiffs—would have been the party to rely on any representations in the final report or other correspondence. . . ." This appeal ensued.

## B. SUMMARY DISPOSITION

Plaintiffs contend the trial court erred in granting SRR's motion for summary disposition.

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Although the trial court indicated that it granted the motion pursuant to MCR 2.116(C)(8), the court considered the waiver letter in rendering its decision. Therefore, "because the trial court considered documentary evidence beyond the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10)." *Cuddington*, 298 Mich App at 270. "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*.

With respect to Counts I and II, the complaint contained factual assertions related to various transactions and interactions between plaintiffs, SRR, the GRSCD and other related parties. Essentially, it appears plaintiffs alleged that SRR violated the waiver letter and improperly conducted the forensic audit of CWT. To that end, Count III contains references to the following three theories of liability: negligent/innocent misrepresentation, intentional (fraudulent) misrepresentation, and breach of contract. Accordingly, we proceed by addressing whether summary disposition was proper as to each of those claims.

## I. NEGLIGENT/INNOCENT MISREPRESENTATION

To establish a prima facie case of negligent or innocent misrepresentation, a plaintiff must prove the following elements: "(1) the defendant made a material representation, (2) the representation was false, (3) the defendant made it with the intention of inducing reliance by the plaintiff, (4) the plaintiff acted in reliance on the representation, and (5) the plaintiff thereby suffered an injury that benefited the defendant. . . ." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 39; 761 NW2d 151 (2015).

Plaintiffs contend that SRR made misrepresentations in its forensic audit. However, irrespective of whether plaintiffs alleged facts to show that any of SRR's representations were false, plaintiffs did not allege any facts to support the third, fourth, and fifth elements of their misrepresentation claim. *Id*. Specifically, SRR conducted the audit on behalf of the GRSCD. After conducting the audit, SRR prepared a final report that contained its findings. The report was prepared for the GRSCD. Plaintiffs failed to plead facts to support that there were any representations in SRR's report that SRR made with the intent to induce plaintiffs to rely on that representation. Rather, the allegations in the complaint support that SRR's audit was prepared with the purpose of informing the GRSCD about the CWT investment. Nothing supports that the audit was indented to induce plaintiffs to rely on it. Furthermore, plaintiffs did not plead, nor do they identify on appeal, the manner in which they relied on SRR's audit or how they suffered an injury that benefitted SRR. To the extent that plaintiffs allege that SRR benefitted because the GRSCD paid SRR for its services, this argument presumes that payment for the audit was contingent on SRR making false representations about plaintiffs, which is baseless. In short, there were no facts to support that SRR made a false representation with the intent to induce plaintiffs to rely on that representation and there were no facts to support that plaintiffs relied on any of SRR's representations in a manner that injured plaintiffs and benefitted SRR. *Zaremba Equip, Inc*, 280 Mich App at 39.

Finally, to the extent plaintiffs contend that SRR made representations in the waiver letter that induced their reliance this argument is devoid of merit. The waiver letter did not contain obligations that SRR made that ran to plaintiffs. Rather, pursuant to the waiver, plaintiff Joseph Capozzoli agreed that SRR did not have any conflict of interest that would compromise SRR's audit of CWT. Thus, to the extent that the waiver contained a representation, it was plaintiff Joseph Capozzoli who represented that SRR did not have a conflict of interest. SRR did not have any obligations under the waiver with respect to plaintiffs, nor did it make representations to plaintiffs. Further, plaintiffs fail to articulate the manner in which they relied on the waiver and how such reliance resulted in damages. See *id*.

In short, there was no genuine issue of material fact to support that SRR engaged in negligent or innocent misrepresentation and summary disposition as to this claim was proper. *Cuddington*, 298 Mich App at 270.

## II. FRAUDULENT/INTENTIONAL MISREPRESENTATION

A claim of fraud requires proof of the following:

> (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew that it was false when it was made, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered injury because of that reliance. [*Zaremba Equip*, 280 Mich App at 38-39.]

Plaintiffs' fraud claim fails for the same reasons that its negligent misrepresentation claim fails. Even if this Court were to assume that SRR made a false representation in the forensic audit that it prepared for the GRSCD, plaintiffs failed to allege any facts to show that SRR made

that representation with the intention that plaintiffs would act on it, or that plaintiffs did act on it, or that plaintiffs suffered an injury because of their reliance. *Id*. For example, in paragraph 101 of the complaint, plaintiffs allege fraudulent misrepresentation, but the facts in that paragraph merely set forth allegations as to the errors SRR made during the audit. Plaintiffs fail to allege facts to show how SRR submitted the audit to the GRSCD with the intent that plaintiffs rely on the audit to their detriment in a way that would benefit SRR. Similarly, plaintiffs failed to allege facts to support that they relied on SRR's representations in a manner that harmed plaintiffs and benefited SRR.

Moreover, plaintiffs failed to plead their fraud claim with particularity. MCR 2.112(B)(1) provides: "In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." To comply with MCR 2.112(B)(1), general allegations or mere speculation are insufficient to properly plead a claim for fraud; rather, each element of the tort must be particularly addressed. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008); *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 586; 543 NW2d 42 (1995). Here, plaintiffs did not address any of the elements of a fraud claim. Instead, under a subheading "Intentional Acts of Misrepresentation and Wrongdoing," plaintiffs' complaint stated: "As stated within subparagraphs (a) and (b)." This was insufficient and did not address any of the elements of fraud. In short, plaintiffs' complaint was inadequate and failed to meet the specificity requirements of MCR 2.112(B)(1). *Cooper*, 481 Mich at 414.

In short, the trial court did not err in granting summary disposition with respect to plaintiffs' intentional misrepresentation/fraud claim. *Cuddington*, 298 Mich App at 270.

## III. BREACH OF CONTRACT

In Count III of the complaint, plaintiffs referred to a "breach of contract/waiver," which references the same allegations set forth in paragraph 101(a) with respect to negligent/innocent misrepresentation. The complaint also alleged that SRR breached a contract by "Utilizing information provided by DGRS which was not part of the books and records of CWT."

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "A valid contract has five elements: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Michigan v Michigan*, 303 Mich App 651, 660; 846 NW2d 583 (2014) (quotation marks and citation omitted).

With respect to the waiver letter, the trial court reasoned that the waiver did not constitute a contract between plaintiffs and SRR. The court explained, "the waiver merely sets forth (a) the scope of defendant's work related to its engagement with GRSCD (e.g., forensic audit of the GRSCD's investment in CWT); (b) acknowledges that defendant previously conducted valuations for entities owned by Mr. Capozzoli; and (c) identifies those prior evaluations."

The trial court did not err in concluding that the waiver did not constitute a contract between SRR and plaintiffs. Here, there was no consideration that passed between the parties

and SRR did not have any obligation to plaintiffs under the terms of the waiver. See *AFT Michigan*, 303 Mich App at 660. Instead, plaintiff Joseph Capozzoli and the GRSCD signed the letter waiving any potential conflicts that SRR may have acquired from prior services the firm provided to the Capozzoli entities. Indeed, the first sentence of the waiver letter set forth the purpose of the document as follows: "The purpose of this letter is to acknowledge a formal waiver of any potential conflicts, by all parties, related to the retention of SRR's Dispute Advisory and Forensic Services Group by [the GRSCD] to perform a forensic audit of its investment in [CWT]." The letter went on to list prior valuation and financial services that SRR provided to plaintiffs' companies and then requested that Joseph Capozzoli on behalf of his corporate entities and the GRSCD "confirm their waiver of any conflict of interest by SRR by signing this letter . . . ."

These terms did not create a contract between SRR and plaintiffs related to SRR's forensic audit of CWT. The letter did not mention anything related to the manner in which SRR was to conduct the audit, there was no consideration that passed between SRR and plaintiffs, and SRR did not assume any obligations that accrued to the benefit of plaintiffs. As such, the letter did not contain the essential elements of a contract. See *AFT Michigan*, 303 Mich App at 560. In short, by signing the letter, Joseph Capozzoli and the GRSCD waived any conflicts of interest that SRR may have had because of SRR's prior dealings with the Capozzolis. Accordingly, because there was no genuine issue of material fact to support that there was a contract between plaintiffs and SRR, plaintiffs' breach of contract claim failed as a matter of law. *Miller Davis Co*, 495 Mich at 178.

Plaintiffs argue that they were third-party beneficiaries of the contract between SRR and the GRSCD. This argument lacks merit.

Our Supreme Court has explained when a party is a third-party beneficiary of a contract as follows:

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person . . . An objective standard is to be used to determine, from the form and meaning of the contract itself . . . whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status. [*Schmalfeldt v N Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003) (citations omitted).]

In this case, SRR, as the promisor in the GRSCD-SRR audit contract, did not undertake to give or do or refrain from doing anything directly to or for plaintiffs. *Id*. Instead, SRR undertook to perform an audit for the GRSCD. None of the benefits of that contract were intended to flow to plaintiffs. Plaintiffs were simply the owners of the investment firm that managed the CWT investment. There were no facts to support that plaintiffs were the third-party beneficiaries of the GRSCD-SRR contract and plaintiffs' breach of contract claim therefore failed as a matter of law. *Miller Davis Co*, 495 Mich at 178.

In sum, there were no genuine issues of material fact regarding any of plaintiffs' three claims; accordingly, the trial court did not err in granting SRR's motion for summary disposition.

## C.  MOTION TO AMEND PLEADINGS

Finally, plaintiffs contend that the trial court erred in denying their motion to amend their complaint.

We review a trial court's denial of a motion for leave to amend the pleadings for an abuse of discretion.  *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 9; 614 NW2d 169 (2000).  "An abuse of discretion occurs when the decision is outside the range of principled outcomes." *Hardrick v Auto Clubs Ins Ass'n*, 294 Mich App 651, 659–660; 819 NW2d 28 (2011).

A party may amend a pleading on leave of the court and "leave shall be freely given when justice so requires."  MCR 2.118(2).  However, a trial court may deny leave to amend when it determines that amendment would be futile.  *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).  "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Formall, Inc v Cmty Nat'l Bank of Pontiac*, 166 Mich App 772, 783; 421 NW2d 289 (1988).

In this case, the trial court determined that amendment of the complaint would be futile, explaining "plaintiffs were not a party to [] either the contract or the waiver and GRSCD –not plaintiffs – would have been the party to rely on any representations in the final report or other correspondence. . . ."  This did not amount to an abuse of discretion.  Here, irrespective of whether plaintiffs amended their pleading, plaintiffs could not allege any set of facts to support their misrepresentation, fraud, or breach of contract claims where they were not a party to the SRR-GRSCD contract.  The representations that SRR made in the audit were not intended to induce plaintiffs' reliance, the waiver was not a contract, and there were no other facts to support any of plaintiffs' claims.  Essentially, plaintiffs' challenged the method by which SRR conducted the audit and failed to allege any viable cause of action in the process.  Plaintiffs' allegations amounted more to defenses against the allegations that the GRSCD brought in the GRSCD litigation.  They did not set forth a separate basis for recovery.  Accordingly, any amendment would have been futile and the trial court did not abuse its discretion in denying plaintiffs' motion to amend the pleadings.  *Cole*, 241 Mich App at 9.

Affirmed.  Defendant having prevailed in full, may tax costs.  MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

-9-